# Illinois Official Reports

## Appellate Court

---

**Sargent Shriver National Center on Poverty Law, Inc. v. Board of Education of the City of Chicago**, 2018 IL App (1st) 171846

---

| | |
|---|---|
| Appellate Court Caption | SARGENT SHRIVER NATIONAL CENTER ON POVERTY LAW, INC., Plaintiff-Appellant, v. THE BOARD OF EDUCATION OF THE CITY OF CHICAGO, Defendant-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-17-1846 |
| Filed | December 3, 2018 |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 2016-CH-16301; the Hon. Kathleen Pantle, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Loevy & Loevy, of Chicago (Matthew Topic and Joshua Burday, of counsel), for appellant.<br><br>Joseph T. Moriarty, Lee Ann Lowder, and Anna R. Slater, of Board of Education of the City of Chicago, for appellee. |
| Panel | PRESIDING JUSTICE MIKVA delivered the judgment of the court, with opinion.<br>Justices Pierce and Griffin concurred in the judgment and opinion. |

**OPINION**

¶ 1     Plaintiff, the Sargent Shriver National Center on Poverty Law, Inc. (Shriver), is a nonprofit legal and policy advocacy organization for low-income individuals and families. In June 2016, Shriver made three requests under the Freedom of Information Act (FOIA or Act) (5 ILCS 140/1 *et seq.* (West 2016)) to the Board of Education of the City of Chicago (Board) for the release of certain records regarding policing in the Chicago Public Schools (CPS). Shriver allegedly sought these records because of its concern that student discipline and arrests contribute to a school-to-prison pipeline that disproportionately affects minority children.

¶ 2     In each instance, the Board denied Shriver's request in writing, explained why compliance would be unduly burdensome, and invited Shriver to narrow its request. Following the third denial, Shriver sued the Board for willful violation of FOIA. Following briefing and argument, the circuit court granted the Board's motion to dismiss Shriver's complaint with prejudice, for failure to state a claim on which relief could be granted. For the reasons that follow, we affirm.

¶ 3                                         I. BACKGROUND

¶ 4     Attached to and incorporated by reference into Shriver's complaint were its three records requests and the Board's three denials. The first request, sent electronically through the CPS FOIA portal on June 2, 2016, was for complaints made to CPS, from 2012 to 2016, involving police officers or security guards stationed inside CPS schools. Shriver alleged that, immediately upon receiving the request, the Board sent an automated reply seeking an extension of FOIA's standard five-day response period of five additional business days in which to respond. On June 10, 2016, six business days after receiving Shriver's request, the Board denied the request. The Board explained that it could not generate a report containing the requested information, stating:

>      "The District does not maintain an overall 'complaints' database and does not, in the ordinary course of business, maintain or generate reports showing complaints made to CPS involving police officers or security guards inside schools or any particular type of school employee or contractor. Therefore, the District has no electronic means to generate the report you request."

¶ 5     The Board also explained why, given the nature of its records and the scope of Shriver's request, it believed compliance would be unduly burdensome:

>      "The District's records on complaints could be located in a multitude of paper files, e-mails, individual complaint letters, discipline files, investigation reports, to name a few. Furthermore, such complaint records could be located at any or all of the District's administrative offices and/or 600+ CPS schools that would require individual outreach to assemble responsive records. Therefore, pursuant to 5 ILCS 140/3(g), your request is unduly burdensome as the burden on the District to search for possible responsive records outweighs any possible public interest in the information. *** [T]he District could face hundreds of man hours just to search discipline records alone to identify complaints against security personnel and police officers that led to disciplinary action."

¶ 6      The Board invited Shriver to narrow and clarify its request by providing a shorter time frame or by specifying the type of documents it was seeking, where the complaints may have been submitted to and by whom, and whether the complaints were made in connection with a judicial or an administrative proceeding.

¶ 7      Before it even received the Board's response, however, Shriver sent a second, narrower, electronic request on June 8, 2016, seeking "[a]lleged employee misconduct[ ] reports involving in school police officers in any capacity entered into the VERIFY system in 2014." Shriver alleged that the Board again sent an automated reply seeking an extension of five business days in which to respond. And six business days after Shriver's request, on June 16, 2016, the Board again denied the request, explaining that, although Shriver had identified a particular database and narrowed its request to a single year, the request was still unduly burdensome:

> "The District's VERIFY system does not include a field to identify 'in-school police officer' therefore we have no way to query the VERIFY system for the incident reports you request. The only way to identify responsive incident reports would be to (1) program a data pull for all incidents recorded in VERIFY as 'alleged employee misconduct' which is estimated at more than 600 incidents for 2014, [and] (2) review the individual narrative description entered for each incident to determine if 'police officer' is noted. Note that there is no CPS employee job title for In-School Police Officer.
>
> *** [T]he District would face hundreds of man hours to research and identify responsive incident reports and then also redact the reports to remove personally identifiable student information and other information exempt from release under FOIA."

¶ 8      The Board again invited Shriver to narrow or clarify its request, and on June 16, 2016, Shriver made its third and final request, for all "[a]lleged employee misconduct[ ] reports [ ]entered into the VERIFY system in 2014." Shriver alleged that the Board again sent an automated reply seeking an extension of five days for its response. Seven business days after Shriver's request, on June 27, 2016, the Board denied the request, providing the following explanation:

> "Your request is categorical and voluminous in nature. A search of 'alleged employee misconduct reports entered into the VERIFY system in 2014' yielded 635 results. The District would face hundreds of man hours to review responsive incident reports and then also redact the reports to remove personally identifiable student information and other information exempt from release under FOIA. The time and resources required to fulfill this request outweigh any public interest in these records and would clearly burden the operations of the District."

¶ 9      On December 16, 2016, Shriver sued the Board, asserting three claims of willful violation of FOIA, one for each of its denied requests. Shriver additionally alleged that it was improper for the Board, as part of its routine handling of FOIA requests, to automatically take a five-day extension of time in which to respond to requests. Shriver sought a declaration that the Board had violated FOIA and an order requiring the Board to produce the requested records, enjoining it from taking extensions via automated response, imposing civil penalties for willful violations, and awarding Shriver attorney fees and costs as a prevailing party.

¶ 10    On March 20, 2017, the Board moved to dismiss Shriver's complaint, pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)), for failure to state a claim on which relief could be granted. The Board argued that Shriver had failed to allege that the Board had willfully or intentionally failed to comply with FOIA or had otherwise acted in bad faith. In response, Shriver insisted that, at the pleading stage, it only needed to allege that it requested public documents from the Board and that its requests were denied; it was the Board's burden to prove, by clear and convincing evidence, that it would have been unduly burdensome to produce the requested records.

¶ 11    In its written order entered on July 14, 2017, the circuit court dismissed Shriver's complaint with prejudice. The court agreed with the Board that section 3(g) of FOIA (5 ILCS 140/3(g) (West 2016)) "requires only that a public body specify in writing the reasons compliance would be unduly burdensome and the extent to which compliance would burden the public body's operations." The court found that the five-day extensions of time taken by the Board were proper, the Board's written responses contained "paragraphs of explanations for why the requests were unduly burdensome and why they could not be complied with," and the Board had no additional burden to prove undue burden by clear and convincing evidence," a standard the court concluded only applied to the record-specific exemptions found in section 7 of FOIA (*id.* § 7). The court ruled that Shriver had failed to allege any facts which, if true, would establish that the Board's refusal to produce the records was willful and intentional or otherwise made in bad faith. This appeal followed.

## II. JURISDICTION

¶ 13    The circuit court dismissed Shriver's complaint with prejudice on July 14, 2017, and Shriver timely filed its notice of appeal from that order on July 24, 2017. We have jurisdiction over this matter pursuant to Illinois Supreme Court Rules 301 and 303, governing appeals from final judgments in civil cases. Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. July 1, 2017).

## III. ANALYSIS

¶ 15    A motion to dismiss under section 2-615 "challenges the legal sufficiency of [a] complaint based upon defects apparent on its face." *Khan v. Deutsche Bank AG*, 2012 IL 112219, ¶ 47. "The essential question is whether the allegations of the complaint, when construed in the light most favorable to the plaintiff, are sufficient to establish a cause of action upon which relief may be granted." *Cochran v. Securitas Security Services USA, Inc.*, 2017 IL 121200, ¶ 11. Dismissal is proper when "it is clearly apparent from the pleadings that no set of facts can be proven that would entitle the plaintiff to recover." *Id.* We accept as true all well-pleaded facts and reasonable inferences that may arise from those facts. *Kanerva v. Weems*, 2014 IL 115811, ¶ 33. Our review of an order granting or denying a motion to dismiss is *de novo*. *Cochran*, 2017 IL 121200, ¶ 11.

## A. The Freedom of Information Act

¶ 17    Underlying FOIA is the policy that access to public records "promotes the transparency and accountability of public bodies" by allowing "the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government." 5 ILCS 140/1 (West 2016). Unless otherwise stated, "[a]ll records

- 4 -

in the custody or possession of a public body are presumed to be open to inspection or copying." *Id.* § 1.2.

¶ 18 In enacting FOIA, however, the legislature also made clear that it did not intend for compliance with records requests "to unduly burden public resources, or to disrupt the duly-undertaken work of any public body." *Id.* § 1. To this end, section 3(g) of FOIA, relied on by the Board in this case, excuses public bodies from complying with categorical requests where the burden of doing so would outweigh the public's interest in the requested information. Section 3(g) provides:

"Requests calling for all records falling within a category shall be complied with unless compliance with the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information. Before invoking this exemption, the public body shall extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions. If any public body responds to a categorical request by stating that compliance would unduly burden its operation and the conditions described above are met, it shall do so in writing, specifying the reasons why it would be unduly burdensome and the extent to which compliance will so burden the operations of the public body. Such a response shall be treated as a denial of the request for information." *Id.* § 3(g).

¶ 19 Section 7 of FOIA separately exempts certain types of records or information from disclosure. *Id.* § 7. For example, personal information is exempt from disclosure if it would "constitute a clearly unwarranted invasion of personal privacy." *Id.* § 7(1)(c). And investigatory records are exempt whenever their disclosure would identify an informant, "disclose unique or specialized investigative techniques," or otherwise "interfere with an active criminal investigation." *Id.* § 7(d)(iv), (v).

¶ 20 In keeping with the legislature's intent that FOIA be liberally construed in favor of disclosure, exemptions are narrowly applied. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006). The burden is always on the public body "to establish that its refusal to permit public inspection or copying is in accordance with the provisions of the FOIA and that the records fall within the exemption it has claimed." *Id.* at 418 (citing 5 ILCS 140/11(f) (West 1998)). Under section 1.2 of FOIA, "[a]ny public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." 5 ILCS 140/1.2 (West 2016); see also *id.* § 11(f) (repeating this requirement); *id.* § 9(a) (providing that a public body's denial of a public records request must include "a detailed factual basis for the application of any exemption claimed"); *id.* § 9(b) (separately providing that denials based on section 7 exemptions "shall specify the exemption claimed to authorize the denial and the specific reasons for the denial, including a detailed factual basis and a citation to supporting legal authority").

¶ 21 Section 11(a) of FOIA provides that a requesting party denied access to a public record may sue the public body that denied its request "for injunctive or declaratory relief." *Id.* § 11(a). And pursuant to section 11(j), "[i]f the court determines that a public body willfully and intentionally failed to comply with [FOIA], or otherwise acted in bad faith, the court shall also impose upon the public body a civil penalty of not less than $2,500 nor more than

"$5,000 for each occurrence." *Id.* § 11(j).

Based on the speed with which it received the Board's initial response to each of those records, Shriver contends that the Board has a practice of automatically taking a five-day extension of time to respond to all requests that it receives, without first evaluating those requests to determine if an extension is warranted. Shriver argues that, by engaging in this practice, the Board took improper, bad-faith extensions, thus forfeiting its ability to assert undue burden as a reason for withholding the requested records. In response, the Board argues that the extensions were proper. It also argues that, by failing to raise it in its opening brief, Shriver has forfeited any argument that a finding of willful and intentional violations of FOIA could be based on the automatic taking of five-day extensions.

Section 3(d) of FOIA provides that a public body must comply with or deny a request for public records in writing within five business days of receiving it. *Id.* § 3(d). Section 3(e), however, provides that this time period "may be extended by the public body for not more than 5 business days from the original due date," for any of seven enumerated reasons. *Id.* § 3(e).

We conclude that the extensions taken by the Board in this case were proper. The plain language of FOIA gives a public body in receipt of a records request the unilateral ability to extend its own response deadline by five days. *Id.* Only extensions of *more* than five days require the written agreement of the requesting party. *Id.* The statute requires the public body to "notify the person making the request of the reasons for the extension and the date by which the response will be forthcoming." *Id.* § 3(f). Nowhere does Shriver allege that the Board failed to comply with this requirement. Because, for the reasons articulated below, we agree with the Board that it would have been unduly burdensome for it to have complied with Shriver's requests, there can be no real dispute that the extensions taken by the Board were proper under section 3(e)(vi) of FOIA, which provides that a five-day extension is proper when a public body cannot produce the requested records within five days "without unduly burdening or interfering with the operations of the public body." *Id.* § 3(e)(vi). Other enumerated justifications might also be applicable.

Contrary to Shriver's assertions, the Board's actions did not run afoul of section 3(d) of FOIA, which provides both that a "[f]ailure to comply with a written request, extend the time for response, or deny a request within 5 business days after its receipt shall be considered a denial of the request" and "[a] public body that fails to respond to a request received may not treat the request as unduly burdensome under subsection (g)." *Id.* § 3(d). In each instance, the Board took a permissible extension of time within five business days of receiving Shriver's request and responded to the request in detail within the properly extended period of time within which to do so. The circuit court correctly dismissed with prejudice Shriver's three claims for willful and intentional failure to comply with FOIA.

C. Undue Burden

We next consider the circuit court's denial of Shriver's request for injunctive relief in the form of an order requiring the Board to produce the requested records. The Board denied each of Shriver's requests on the basis that compliance would be unduly burdensome. For compliance with a FOIA request to be considered unduly burdensome, three things must be

shown: (1) the request must be a categorical one, seeking "all records falling within a category"; (2) there must be no way to narrow the request; and (3) the burden on the public body must outweigh public interest in the requested information. *Id.* § 3(g). To properly invoke section 3(g), a public body must give the requesting party "an opportunity to confer with it in an attempt to reduce the request to manageable proportions" and explain in writing why compliance with the request would be unduly burdensome. *Id.* The parties do not dispute that Shriver's records requests were categorical. And the parties' pre-suit communications indicate that, although invited to do so, Shriver made no further attempts to narrow or clarify its requests following the Board's third denial. We focus then—as the parties have in their briefs—on the third element: whether the burden of compliance outweighed public interest in the records sought.

¶ 29    Shriver argues that it was the Board's burden to prove this element by clear and convincing evidence. The Board contends, however, that its written responses to Shriver's requests were sufficient to invoke section 3(g). The Board's position, which the circuit court adopted, is that section 3(g) is not a true exemption and the requirement, stated in both section 1.2 and section 11(f) of FOIA, that "[a]ny public body that asserts that a record is *exempt* from disclosure has the burden of proving by clear and convincing evidence that it is exempt" (emphasis added) (*id.* § 1.2; see also *id.* § 11(f)) applies only when a public body asserts one of the record-specific exemptions found in section 7 of FOIA (5 ILCS 140/7 (West 2016)).

¶ 30    In support of this proposition, the Board relies on *Shehadeh v. Madigan*, 2013 IL App (4th) 120742. The plaintiff in that case submitted a FOIA request to the Illinois Attorney General seeking "copies of any publications, opinions, reports or other records that would or could be used for guidance by [the Attorney General's] office or any other public body in complying with Illinois's FOIA laws." (Internal quotation marks omitted.) *Id.* ¶ 1. The Attorney General responded in writing, stating that it would be unduly burdensome to comply with the request because a preliminary search had retrieved over 9000 potentially responsive files that her staff would have to review and redact by hand. *Id.* ¶ 5. The Attorney General's office invited the plaintiff to narrow his request by identifying specific FOIA exemptions or issues concerning which he hoped to obtain documents, but the plaintiff declined to so, electing instead to file a lawsuit. *Id.* The Attorney General moved for and was granted summary judgment on the basis that her office had properly asserted undue burden under section 3(g). *Id.* ¶¶ 10-11, 13.

¶ 31    On appeal, the plaintiff in *Shehadeh* argued the Attorney General's office had failed to prove that it had either conducted an adequate search or that it would indeed be unduly burdensome to comply with plaintiff's request. *Id.* ¶¶ 27, 34. The appellate court disagreed, finding that the plaintiff's request was "patently broad on its face" and "[a]ccordingly, the Attorney General's response, explaining the burden that complying with plaintiff's request would cause, was sufficient to claim a section 3(g) exemption in [that] case." *Id.* ¶ 28. The court rejected the notion that a public body is required—as it would be if asserting a section 7 exemption—either to demonstrate the adequacy of its search or provide affidavits from its staff members in support of a claim of undue burden where the public body has already complied with section 3(g)'s requirement that it specify its reasons for noncompliance in writing. *Id.* ¶¶ 30, 34.

¶ 32    The Board's reliance on *Shehadeh* for the proposition that section 3(g) is not a FOIA exemption subject to proof by clear and convincing evidence is misplaced. First, the *Shehadeh* court itself referred to section 3(g) as an exemption throughout its decision. *Id.* ¶¶ 19, 25, 28, 30, 32, 34. Indeed, the term is used in the statute. See 5 ILCS 140/3(g) (West 2016) ("Before invoking *this exemption*, the public body shall ***." (Emphasis added.)). Nor are the words "clear and convincing" found anywhere in the *Shehadeh* decision.

¶ 33    What is clear from *Shehadeh* is that section 7 exemptions are, by their very nature, different from the undue burden exemption in section 3(g). A plaintiff wishing to test the applicability of a section 7 exemption has little to go on besides the public body's bare assertion that all responsive records were located and fall within an exempt category. It makes sense that in such cases courts have required public bodies to demonstrate, through affidavits or an *in camera* review, that their searches were adequate and that the documents they located fall within the claimed category of statutorily exempt documents. See, *e.g.*, *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 470-71 (2003).

¶ 34    A plaintiff seeking to test a claim of undue burden under section 3(g) will—if the public body has engaged in the good-faith dialogue required by that section—have more information at its disposal. When documentation of that exchange is attached to the plaintiff's complaint, and when the public body's justifications are detailed and not conclusory, vague, or sweeping (*cf. Day v. City of Chicago*, 388 Ill. App. 3d 70, 74 (2009) (applying these same criteria to determine when an affidavit in support of a section 7 exemption can be relied on in lieu of an *in camera* review)), it may be possible for the circuit court to determine on the pleadings whether a public body has made a clear and convincing showing of undue burden.

¶ 35    Such is the case here. The Board provided a detailed written response to each of Shriver's records requests. In response to the first request, it explained that the complaints Shriver sought were neither centrally located nor kept electronically and invited Shriver to narrow its request, either by specifying a shorter time frame or by providing more information about the complaints (*i.e.*, who they were submitted by or to, what form they took, and whether they were submitted in connection with some sort of formal proceeding). Shriver's second request was narrower; it sought one year of misconduct reports instead of four and specified a particular database or software—the "VERIFY system"—in which the complaints might be found. The Board again responded in writing, providing details about fields used in the VERIFY system and the results of a preliminary search of the system, which identified hundreds of potentially responsive files. The Board explained that the only way to isolate employee misconduct reports involving in-school officers would be to manually review and redact those 600 employee misconduct reports, work it explained would take hundreds of hours. Shriver's final request was actually broader than its second, seeking all employee complaints in the VERIFY system, not just those involving police officers.

¶ 36    This written exchange, appended to the complaint, provided the circuit court with an adequate understanding of the burden involved in complying with Shriver's requests. An *in camera* review would not have assisted the court further, as application of section 3(g) does not turn on the nature of the withheld documents, but on the nature of the search necessary to identify and prepare them for public disclosure. And we see no reason to require the Board to submit an affidavit that would, in all likelihood, contain the same information provided in its written responses. By insisting that more is required here, Shriver is

essentially asking us to hold that an evidentiary hearing is required whenever a public body asserts undue burden under section 3(g). We do not believe this was the legislature's intent.

¶ 37   We also decline to take judicial notice of a website—provided by Shriver for the first time in its appellate reply brief—describing optical character recognition software that it contends the Board could have used to convert information in the VERIFY system into searchable text. Nothing in Shriver's complaint or the parties' pre-suit communications indicates that Shriver ever raised this possibility with the Board before filing suit, and nothing in the record indicates that Shriver ever asked the circuit court to take judicial notice of this purported fact. By raising the argument for the first time in its reply brief, Shriver has also deprived the Board of an opportunity to respond to it. Under these circumstances, judicial notice would be improper. See *Mabry v. Boler*, 2012 IL App (1st) 111464, ¶ 15 ("Generally, arguments not raised before the circuit court are forfeited and cannot be raised for the first time on appeal.); Ill. S. Ct. R. 341(h)(7) (eff. Nov. 1, 2017) ("Points not argued are waived and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 38   In sum, we hold that a public body asserting a section 3(g) exemption must make a clear and convincing showing that the burden of compliance outweighs public interest in the disclosure of the requested records. This need not always—or even in most cases—necessitate an evidentiary hearing or the filing of detailed affidavits. Where, as here, the pre-suit communications attached to the complaint demonstrate that the public body has complied in good faith with section 3(g) by providing a written explanation for its noncompliance and has given the requesting party an opportunity to test the scope of that explanation by clarifying or narrowing its request, the circuit court may not need any additional information to weigh the burden of compliance against the public's interest in disclosure. What constitutes a clear and convincing showing of undue burden will likely vary from case to case, depending on the broadness of the request, the level of detail provided in the public body's response, and the nature of the parties' exchange.

¶ 39   While we think the record in this case provides a clear and convincing showing of the burden compliance would place on the Board, it remains for us to decide whether the circuit court erred in concluding that that burden outweighed the public's interest in the records that Shriver sought. We take issue neither with Shriver's assertion, supported by numerous secondary sources, that there is "an alarming national trend" whereby "primarily children of color are funneled out of public schools and into the juvenile justice system," nor with its belief that "[p]olice officers patrolling school hallways often have little or no training in working with youth." (Internal quotation marks omitted.) These are certainly matters of great public concern. But Shriver's repeated insistence that "student arrest data" is of critical public interest is somewhat misleading. Shriver has not requested student arrest data. Indeed, it acknowledges in its brief that the U.S. Department of Justice already requires school boards to compile and make school arrest data available to the public. Instead, Shriver has requested a broad swath of the Board's employment records.

¶ 40   We have held that when a request is "overly broad and requires the public body to locate, review, redact and arrange for inspection a vast quantity of material that is largely unnecessary to the [requestor's] purpose," this constitutes undue burden. *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 17 (2010). Although we agree with Shriver that it is important for the public to monitor the interactions

police officers have with CPS students, we also agree with the Board that the burden associated with reviewing and redacting all of its employee misconduct reports, for an entire year, outweighs the possibility that such a broad search would yield material that is necessary to Shriver's stated purpose. Unlike in *National Ass'n of Criminal Defense Lawyers*, where it was clear that each of the requested case files involving eyewitness identifications would be relevant to the legislatively mandated study on eyewitness identification procedures that the requesting party was charged with carrying out, here, it is uncertain what percentage, if any, of the employee misconduct reports Shriver requested might have anything to do with the school-to-prison pipeline. *Id.* at 12.

¶ 41    If Shriver had reason to suspect misconduct within a specific school or by a specific officer and had tailored its request accordingly, or if it had focused its requests on the schools with the highest student arrest rates, the burden would be lower and the public interest higher. As it stands, although we appreciate Shriver's concerns, what it seeks is an opportunity to engage in a fishing expedition through the Board's files, in the hopes of finding that some officer or guard, in some school, engaged in some sort of misconduct that may have contributed to a school-to-prison pipeline. Because the attachments to Shriver's complaint sufficiently demonstrate that the burden of compliance with such a request outweighs the public's interest in the records sought, dismissal pursuant section 2-615 of the Code was proper.

¶ 42                                      IV. CONCLUSION

¶ 43    For the above reasons, we affirm the circuit court's dismissal with prejudice of Shriver's complaint for willful violation of FOIA and an order compelling the Board to produce the requested records.

¶ 44    Affirmed.