(No. 93347.—

ILLINOIS EDUCATION ASSOCIATION, an Illinois Not For Profit Corporation, Appellant, v. THE ILLINOIS STATE BOARD OF EDUCATION, Appellee.

*Opinion filed May 22, 2003.*

Ralph H. Loewenstein, of Loewenstein, Hagen & Smith, P.C., of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, and Brian F. Barov, Assistant Attorney General, of Chicago, of counsel), for appellee.

JUSTICE RARICK delivered the opinion of the court:

The issue presented in this case is whether the Freedom of Information Act (Act) (5 ILCS 140/1 *et seq.* (West 2000)) requires the Illinois State Board of Education (Board) to disclose material provided to the Illinois Attorney General (Attorney General) pertaining to its request for an Attorney General opinion, or whether such material is protected by the attorney-client privilege. The Illinois Education Association (IEA) filed this action against the Board seeking a declaratory judgment, arguing that it was entitled to certain documents pursuant to the Act. Both parties filed motions for summary judgment, and the circuit court of Sangamon County granted the Board's motion and denied the IEA's motion, finding the material was exempt from disclosure pursuant to sec-

tion 7(1)(n) of the Act (5 ILCS 140/7(1)(n) (West 2000)). The IEA appealed, and a divided appellate court affirmed. 327 Ill. App. 3d 326. We granted the IEA's petition for leave to appeal. 177 Ill. 2d R. 315.

Summary judgment is proper where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2000); *Travelers Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 292 (2001). In appeals from summary judgment rulings, our review is *de novo*. *Travelers*, 197 Ill. 2d at 292.

The record in the instant case reveals the following facts. On July 17, 2000, the IEA made a request under the Act seeking the disclosure of all materials that the Board had provided to the Attorney General in the course of requesting Attorney General opinions on four topics. We note that, for purposes of this appeal, only the material pertaining to one of the Attorney General opinions remains at issue.[1] That portion of the IEA's request sought:

> "Any and all materials provided to the Illinois Attorney General's Office by the Illinois State Board of Education with regard to its request for an Attorney General's opinion on the issue of whether the Illinois State Board of Education and/or the Illinois Teacher Certification Board has authority to hear cases where an applicant for a teaching certificate has been found to be more than 30 days delinquent in payment of child support, has failed to comply with a subpoena or warrant relating to paternity or child support proceedings and/or has failed to make the

---

[1]The Board no longer claimed privilege with respect to materials associated with two of the opinions after those opinions were released, and it is uncontroverted that a third set of materials does not exist because the Board made no request for an Attorney General opinion on that topic.

certificate as required by section 10—65 of the Illinois Administrative Procedure Act, 5 ILCS 100/10—65."

On July 26, 2000, the Board denied the IEA's request for this material citing section 7(1)(n) of the Act, which exempts from disclosure "[c]ommunications between a public body and an attorney *** representing the public body that would not be subject to discovery in litigation." 5 ILCS 140/7(1)(n) (West 2000). On July 28, 2000, the IEA appealed to the State Superintendent of Education and, on August 10, 2000, he affirmed the denial of the IEA's request. On August 24, 2000, the IEA filed its complaint against the Board in the circuit court seeking a declaratory judgment that the IEA was entitled to receive the requested material from the Board and that the material was not exempt from disclosure under the Act.

On October 10, 2000, the Board filed its index to records, pursuant to the IEA's motion made under section 11(e) of the Act (5 ILCS 140/11(e) (West 2000)). In the index, the Board stated, in relevant part, as follows:

"The requested materials comprise a letter directed to Attorney General Jim Ryan from Respicio F. Vazquez, General Counsel to the Illinois State Board of Education. The letter requests an opinion from the Attorney General as to whether the Illinois State Board of Education and/or the Illinois Teacher Certification Board has decision-making authority relative to the determination of delinquency in child support payments called for in Section 10—65 of the Illinois Administrative Procedure Act. The letter contains confidential communication between the Illinois State Board of Education and its Chief Legal Advisor."

The index further provided, as required by section 11(e)(ii), that access to the requested material was denied pursuant to the exemption set forth in section 7(1)(n) of the Act.

On October 27, 2000, the IEA filed both a motion for summary judgment and a motion for *in camera* inspec-

tion of the documents at issue. Thereafter, on January 8, 2001, the Board filed its motion for summary judgment, together with the affidavits of its general counsel, Vazquez, and Michael J. Luke, chief of the Opinions Division of the Attorney General's office.

In his affidavit, Vazquez stated, *inter alia*, that the Board "regularly requests legal advice from the Office of the Illinois Attorney General," and that "[n]ot only does the Attorney General represent [the Board] and its employees when they are named parties to litigation, [the Board] is also represented by the Illinois Attorney General on an ongoing basis." Vazquez further averred that the Board communicates with the Attorney General "with the general exception [*sic*] that the communications are privileged as between attorney and client, and thus will remain confidential," and that the Board's requests for the Attorney General opinions involved herein "were made with the expectation that they would be maintained in confidence by the Attorney General's Office and would not be disclosed to any third party or the public."

Additionally, Vazquez's affidavit stated that while the Board "is aware that the official opinions issued by the Office of the Attorney General are eventually published for the public," the Board "relies upon the fact that the Attorney General's published opinions do not reveal the substance of any privileged communications" between the Board and the Attorney General's office, and that it is the Board's "understanding and expectation that any communication between the [Board] and the Attorney General's Office with respect to those opinions remain confidential pursuant to the attorney-client privilege for public bodies consulting with their attorney."

Luke's affidavit stated, *inter alia*, that "[a]s the State's chief legal officer, the Attorney General represents State officers and agencies including the [Board] on an

ongoing basis," that the Board "regularly requests legal advice and opinions" from the Attorney General, and that it has been "the practice of the Office of the Attorney General to treat documents relating to pending requests for Attorney General opinions in confidence." Luke further averred that the "Office of the Attorney General recognizes that such communications may be subject to the attorney/client privilege," and that "[a]lthough Attorney General opinions often reference the request for an opinion to the extent necessary to frame the issue to form a cogent opinion, such opinions generally do not recite the substance of the communication between the State agency and the Office of the Attorney General."

Although no report of proceedings is included in the record on appeal, it appears from the common law record that a hearing on the parties' cross-motions for summary judgment was held on February 7, 2001, and that the circuit court thereafter entered its written order granting judgment in favor of the Board on February 13, 2001. The IEA timely appealed, and the appellate court majority affirmed, holding that because the Board drafted the material at issue with the intent that it remain confidential and in order to obtain legal advice from the State's chief legal officer, the Attorney General, the exemption set forth in section 7(1)(n) for communications between a public body and its attorney was applicable. 327 Ill. App. 3d at 329-31. Justice Cook, in dissent, argued that the Board has no attorney-client relationship with the Attorney General in this case that justified its refusal to turn over the requested material. 327 Ill. App. 3d at 331 (Cook, J., dissenting).

In conducting our analysis, we are guided by the principle that, under the Freedom of Information Act, public records are presumed to be open and accessible. *Lieber v. Board of Trustees of Southern Illinois Univer-*

*sity*, 176 Ill. 2d 401, 407 (1997). Indeed, the Act's introductory paragraphs clearly set forth this legislative intent:

"Pursuant to the fundamental philosophy of the American constitutional form of government, it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act. Such access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest.

This Act is not intended to be used to \*\*\* disrupt the duly-undertaken work of any public body independent of the fulfillment of any of the fore-mentioned rights of the people to access to information.

\*\*\*

These restraints on information access should be seen as limited exceptions to the general rule that the people have a right to know the decisions, policies, procedures, rules, standards, and other aspects of government activity that affect the conduct of government and the lives of any or all of the people. The provisions of this Act shall be construed to this end." 5 ILCS 140/1 (West 2000).

Relying upon this clear statement of public policy and legislative intent, this court has repeatedly held that the exceptions to disclosure set forth in the Act are to be read narrowly. See *Lieber*, 176 Ill. 2d at 407; *American Federation of State, County & Municipal Employees (AFSCME) v. County of Cook*, 136 Ill. 2d 334, 341 (1990); *Bowie v. Evanston Community Consolidated School District No. 65*, 128 Ill. 2d 373, 378 (1989). Thus, when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions set forth in section 7 of the Act applies. *Lieber*, 176 Ill. 2d at 407-08; 5 ILCS 140/7 (West 2000); 5 ILCS 140/3 (West 2000) ("Each public body shall

make available to any person for inspection or copying all public records, except as otherwise provided in Section 7 of this Act").

"If the public body seeks to invoke one of the exemptions in section 7 as grounds for refusing disclosure, it is required to give written notice specifying the particular exemption claimed to authorize the denial." *Lieber*, 176 Ill. 2d at 408; 5 ILCS 140/9(b) (West 2000). Thereafter, if the party seeking disclosure of information under the Act challenges the public body's denial in circuit court, the public body has the burden of proving that the records in question fall within the exemption it has claimed. *Lieber*, 176 Ill. 2d at 408; 5 ILCS 140/11 (West 2000); see also *Carter v. Meek*, 322 Ill. App. 3d 266, 268 (2001). "To meet this burden and to assist the court in making its determination, the agency must provide a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing." (Emphasis in original.) *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 537 (1989); accord *Cooper v. Department of the Lottery*, 266 Ill. App. 3d 1007, 1012 (1994); *Carbondale Convention Center, Inc. v. City of Carbondale*, 245 Ill. App. 3d 474, 477 (1993); *Williams v. Klincar*, 237 Ill. App. 3d 569, 572 (1992).

In the case at bar, the Board denied the IEA's request citing section 7(1)(n), which provides an exemption for "[c]ommunications between a public body and an attorney or auditor representing the public body that would not be subject to discovery in litigation." 5 ILCS 140/7(1)(n) (West 2000). Therefore, in order for the Board to prove that the material requested by the IEA falls within the exemption contained in section 7(1)(n), the Board was required to establish both that: (1) the Attorney General was "representing" the Board; and (2) the communications would not be "subject to discovery in litigation."

As to the first requirement, this court has consistently held, under both the 1870 and the 1970 constitutions, that the Attorney General is the chief legal officer of the state. *Environmental Protection Agency v. Pollution Control Board*, 69 Ill. 2d 394, 398 (1977); *Fergus v. Russel*, 270 Ill. 304, 342 (1915). However, the question of whether the Attorney General is "representing" a public body when receiving and fulfilling a request for an Attorney General opinion appears to be one of first impression. In *Environmental Protection Agency*, 69 Ill. 2d at 399, this court discussed the Attorney General's role with regard to state agencies, finding:

"As the chief legal officer of the State, the Attorney General has the constitutional duty of acting as legal adviser to and legal representative of State agencies. He or she has the prerogative of conducting legal affairs for the State. The effect of this grant of power to the Attorney General is that Illinois is served by a centralized legal advisory system. There are, arguably, at least two reasons for this centralization. First, private counsel for State agencies are expensive. *** Second, centralization is more efficient. Whatever the merits of these arguments, it remains true that the duties of the Illinois Attorney General encompass advising and representing State agencies."

This court has additionally recognized that, under the Illinois Constitution, the Attorney General has retained his common law powers and role as "the sole official advisor of the executive officers and of all boards, commissions and departments of the State government, and it is his duty to conduct the law business of the State, both in *and out* of the courts." (Emphasis added.) *Fergus*, 270 Ill. at 342; see also *Environmental Protection Agency*, 69 Ill. 2d at 399. More specifically, section 4 of the Attorney General Act (15 ILCS 205/4 (West 2000)) provides that the duties of the Attorney General include: "To consult with and advise the governor and other state officers, and give, when requested, written opinions upon

all legal or constitutional questions relating to the duties of such officers respectively." 15 ILCS 205/4 (West 2000).

The IEA argues that the Attorney General is not representing a state agency when it issues an Attorney General opinion, and that the performance of this duty pursuant to section 4 "is a separate function from [the Attorney General's] responsibility to 'represent' the State in court or to give private advice." We cannot agree. Rather, we agree with the Board that section 4 "makes no distinction between the Attorney General's opinion writing function and any other of his legal functions," and that nothing in section 4 suggests that, in issuing written opinions, the Attorney General acts in any other capacity than "as the legal officer for state officials." See *State ex rel. Caryl v. MacQueen*, 182 W. Va. 50, 53, 385 S.E.2d 646, 649 (1989) ("even in situations where the Attorney General stands as an 'administrator of the law,' he remains the legal representative of the State and its citizens"). Indeed, an examination of section 4 reveals the interrelationship of the duties "[t]o consult with *and* advise *** state officers, *and* give, when requested, written opinions," as evidenced by their placement in a single conjunctive sentence among the 14 subsections enumerating the Attorney General's duties. (Emphases added.) 15 ILCS 205/4 (West 2000); see *Jarvis v. South Oak Dodge, Inc.*, 201 Ill. 2d 81, 87 (2002) ("Generally, use of the conjunctive 'and' between two or more statutory elements indicates that the legislature intended that all of the elements must be satisfied in order to comply with the statute").

Based on the foregoing, we conclude that the Attorney General's opinion writing function is an inherent part of the Attorney General's duty to represent public bodies such as the Board. See W. Scott, *The Role of Attorney General's Opinions in Illinois*, 67 Nw. U. L. Rev. 643, 643 (1972) ("one of the most important but least

heralded responsibilities of the Illinois Attorney General is the issuance of written opinions to the various state officers whom he is empowered and required to advise"); see also P. Heiser, *The Opinion Writing Function of the Attorney General*, 18 Idaho L. Rev. 9, 9 (1982) ("Inherent in the role of attorneys general as chief legal officers for their states is the function of rendering legal opinions to various officials, departments, and agencies of government"). Moreover, the record herein reveals that the Board, through the filing of its affidavits and "Memorandum of Law in Support of Defendant's Motion for Summary Judgment," presented the circuit court with many of the same facts and arguments that we have relied upon in deciding this question. Therefore, we further conclude that the Board provided the requisite detailed justification for its claim that the Attorney General was "representing" the Board for purposes of applying the exemption set forth in section 7(1)(n) of the Act.

The second requirement for application of the section 7(1)(n) exemption is that the communication at issue "not be subject to discovery in litigation," *i.e.*, that the communication falls within the attorney-client privilege. See 166 Ill. 2d R. 201(b)(2). This court, in defining the attorney-client privilege, has stated that: (1) where legal advice of any kind is sought, (2) from a professional legal advisor in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence, (5) by the client, (6) are permanently protected, (7) from disclosure by himself or the legal advisor, (8) except the protection be waived. *Fischel & Kahn, Ltd. v. Van Straaten Gallery, Inc.*, 189 Ill. 2d 579, 584 (2000); *In re Himmel*, 125 Ill. 2d 531, 541 (1988); *People v. Adam*, 51 Ill. 2d 46, 48 (1972).

In the case at bar, we agree with the appellate court majority that the letter at issue, requesting an Attorney General opinion, was created by Vazquez "to obtain legal

advice from the state's chief legal officer." 327 Ill. App. 3d at 330. However, these facts alone do not establish that the definition of attorney-client privilege has been met, because the privilege is based on the confidential nature of the communication. See *People v. Simms*, 192 Ill. 2d 348, 381 (2000); see also *Dickerson v. Dickerson*, 322 Ill. 492, 500 (1926) (one fundamental condition necessary to the establishment of the privilege is that the communications must originate in a confidence that they will not be disclosed). Indeed, this court has found that matters intended by a client for disclosure by the client's attorney to third parties, who are not agents of either the client or the attorney, are not privileged. *Himmel*, 125 Ill. 2d at 542; *People v. Werhollick*, 45 Ill. 2d 459, 462 (1970).

Here, the IEA argues that because the Board knew the Attorney General opinion it had requested would be made public, and that material submitted to the Attorney General with such requests may be and often is quoted in the resulting opinions, the Board had no reasonable expectation that the material would remain confidential.[2] The Board, in turn, cites to Vazquez's affidavit stating that the letter at issue was drafted with the intent that it remain confidential and to Luke's affidavit stating that the office of the Attorney General "treat[s] documents relating to pending requests for Attorney General opinions in confidence." However, as we have noted, it was the Board's burden under the Act to establish that its refusal to release the requested material fell within the narrow ambit of section 7(1)(n), by providing "a *detailed* justification for its claim of exemption, addressing the requested documents specifically and in a man-

---

[2]Originally, Attorney General opinions were published in bound volumes, but now are available electronically over the Internet at the Attorney General's website. J. McKnight, *Finding Illinois Attorney General Opinions*, 86 Ill. B.J. 393 (1998).

ner allowing for adequate adversary testing." (Emphasis in original.) *Baudin*, 192 Ill. App. 3d at 537; see also *Cooper*, 266 Ill. App. 3d at 1012.

Pursuant to section 11(f) of the Act, the court "shall conduct such in camera examination of the requested records as it finds appropriate to determine if such records or any part thereof may be withheld under any provision of this Act." 5 ILCS 140/11(f) (West 2000). This section has been interpreted by our appellate court to mean that the circuit court need not conduct an *in camera* review where the public body meets its burden of showing that the statutory exemption applies by means of affidavits. See *Williams*, 237 Ill. App. 3d at 572-73; *Baudin*, 192 Ill. App. 3d at 535, 538. However, affidavits will not suffice if the public body's claims are conclusory, merely recite statutory standards, or are too vague or sweeping. See *Williams*, 237 Ill. App. 3d at 572-73; *Baudin*, 192 Ill. App. 3d at 538.

In the case at bar, we find the affidavits submitted by the Board to be merely conclusory and thus inadequate to sustain the Board's burden of proof. The only information of record pertaining specifically to the confidentiality of the material at issue comes from the vague affidavits of Vazquez and Luke and from a conclusory statement in the index to records that Vazquez's letter "contains confidential communication between the Illinois State Board of Education and its Chief Legal Advisor." Further, despite a request by the IEA for *in camera* review of the material at issue, there is no indication in the record that the circuit court either conducted such a review or determined that it was unnecessary. See 5 ILCS 140/11(e), (f) (West 2000).

Therefore, given the inadequacy of the Board's affidavits and the circuit court's failure to conduct an *in camera* review, we are compelled to conclude that the court had an insufficient basis to grant summary judg-

ment for the Board. As such, this cause must be remanded for the circuit court to conduct further proceedings to determine whether the material in question is exempt under section 7(1)(n). See *Williams*, 237 Ill. App. 3d at 573; *Baudin*, 192 Ill. App. 3d at 538.

In remanding, we caution the circuit court that two considerations must be taken into account. First, as we have noted, in light of the public policy favoring open and accessible government documents, the attorney-client exemption set forth in section 7(1)(n) is to be construed and applied narrowly. This is so notwithstanding the countervailing policy favoring confidentiality between attorneys and clients. We agree with Justice Cook's dissent that "[g]iven the breadth of the language of the [Act] requiring disclosure, we should be hesitant to read the attorney-client privilege so as to swallow up the duty to disclose." 327 Ill. App. 3d at 332 (Cook, J., dissenting); see also *Minneapolis Star & Tribune Co. v. Housing & Redevelopment Authority*, 310 Minn. 313, 322-23, 251 N.W.2d 620, 625 (1976) ("public officers and attorneys [can]not abuse their trust by extending the privilege as a mere conduit to suppress public observation of the decision-making process").

Second, and equally as important, under the Act, the burden is on the public body to demonstrate that the attorney-client exemption of section 7(1)(n) is applicable. But, in meeting its burden, the public body may not simply treat the words "attorney-client privilege" or "legal advice" as some talisman, the mere utterance of which magically casts a spell of secrecy over the documents at issue. Rather, the public body can meet its burden only by providing some *objective* indicia that the exemption is applicable under the circumstances. Thus, summary judgment would be appropriate without *in camera* review if the affidavits show with reasonable specificity why the documents fall within the claimed exemption

and are sufficient to allow adversarial testing. See *Baudin*, 192 Ill. App. 3d at 542. However, we believe that *in camera* review by the circuit court is the most effective way for the public body to objectively demonstrate that the exemption claimed does, in fact, apply. See *Baudin*, 192 Ill. App. 3d at 543 (McLaren, J., concurring) ("The trial court should be hesitant in determining a privilege exists based solely on the affidavits submitted by the defendant, for without an *in camera* review there is no external means to verify the truthfulness of the affidavits"). Such *in camera* review affords the benefits of an impartial arbiter without the risks accompanying public disclosure of the documents. See *Baudin*, 192 Ill. App. 3d at 543 (McLaren, J., concurring).

Thus, on remand, the circuit court must apply a narrow construction of section 7(1)(n) in determining those portions of the material which the Board could reasonably believe were privileged and confidential communications with its counsel, the Attorney General, and those portions which state the substance of the request for an Attorney General opinion and to which no claim of confidentiality could reasonably apply. The IEA would then be entitled to disclosure of the letter, following a redaction by the trial court of any matters that were properly within the attorney-client privilege. See *Carter v. Meek*, 322 Ill. App. 3d 266, 269 (2001); *Baudin*, 192 Ill. App. 3d at 543.

In summary, we hold that the attorney-client exemption set forth in section 7(1)(n) of the Act may apply to material submitted by a public body requesting an Attorney General opinion. However, a public body may only invoke this exemption to deny disclosure of material for which a reasonable expectation of confidentiality exists. Moreover, under the Act, in order to establish the requisite detailed justification for its claim of exemption, the public body must provide the circuit court some objective indicia by which to determine this issue.

Accordingly, because the Board failed to establish that the information requested by the IEA was, as a matter of law, exempt from disclosure, summary judgment for the Board was inappropriate. We therefore remand this matter to the circuit court for an *in camera* review of the material at issue. If the exemption claimed applies to any portion of the material, the court must then redact that portion prior to disclosure of the remainder of the material to which the exemption does not apply.

The judgments of the appellate and circuit courts are reversed and the cause is remanded to the circuit court for further proceedings.

*Appellate court judgment reversed;*
*circuit court judgment reversed;*
*cause remanded.*