2022 IL App (1st) 211194-U

Order filed: June 9, 2022

FIRST DISTRICT
FOURTH DIVISION

No. 1-21-1194

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| JOHN KRAFT, EDGAR COUNTY WATCHDOGS, SHREYAS GANDLUR and ANDY THAYER, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiffs-Appellants, | ) ) | |
| | ) | No. 20 CH 5792 |
| v. | ) ) | |
| | ) | Honorable |
| THE CHICAGO POLICE DEPARTMENT, | ) ) | Raymond W. Mitchell, Judge, presiding. |
| Defendant-Appellee. | ) | |

JUSTICE ROCHFORD delivered the judgment of the court.
Presiding Justice Reyes and Justice Lampkin concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Circuit court properly granted summary judgment in favor of police department in this FOIA proceeding, where police department established that responding to plaintiffs' record requests would be unduly burdensome.

¶ 2    Plaintiffs-appellants, John Kraft, Edgar County Watchdogs (ECW), Shreyas Gandlur, and Andy Thayer, brought two lawsuits against defendant-appellant, the Chicago Police Department (CPD), seeking the disclosure of certain records related to a 2020 officer-involved shooting, pursuant to the Freedom of Information Act (FOIA) (5 ILCS 140/1 *et seq.* (West 2020)).

¶ 3    Plaintiffs' lawsuits were consolidated, and the parties filed cross-motions for summary judgment. The circuit court denied plaintiffs' motion and granted CPD's motion, ruling that the

records sought by plaintiffs were exempt from disclosure under FOIA. Plaintiffs have appealed, and for the following reasons we affirm.

¶ 4 At approximately 2:30 p.m. on August 9, 2020, CPD officers were involved in the non-fatal, officer-involved shooting of Latrell Allen. Shortly thereafter, CPD issued public statements about the shooting through its superintendent. In addition, two press releases regarding the shooting were issued the following day by the Civilian Office of Police Accountability (COPA). Therein, COPA indicated that preliminary information indicated that the officers opened fire after Allen discharged a firearm at the officers. Allen was shot and was transported to a hospital in stable condition. Noting that the officers involved were not equipped with body-worn cameras and that its investigation was ongoing, each press release asked anyone with further information or relevant video evidence of the shooting to contact COPA.

¶ 5 Less than 24 hours after the shooting, Gandlur submitted a FOIA request to CPD seeking "all video or audio footage related to the police-involved shooting in Englewood on August 9, 2020[,] around 2:30 PM, including, but not limited to, body-worn camera footage and audio, dashcam footage and audio, footage from [Police Observation Devices], police radio traffic, 911 calls, or any other video or audio footage." CPD acknowledged receipt of the request the next day, and in a letter issued August 11, 2020, CPD extended the time to respond by five business days under section 3(e) of FOIA. 5 ILCS 140/3(e) (West 2020).

¶ 6 In that letter, CPD acknowledged its obligation under FOIA to respond to the request within no more than 10 business days. However, CPD went on to explain that due to the COVID-19 pandemic, some of CPD's FOIA officers were unable to report to work or were working from home, and some had been deployed to the field for public safety. As such, CPD informed Gandlur as follows:

"Please keep in mind that FOIA allows CPD and the requester to come to a mutually agreeable response period to comply with a FOIA request. Members of the public and media are asked to keep these considerations in mind and are strongly encouraged to work with public bodies to agree on reasonable and appropriate response times in light of the public health concerns we all face. Given that the length of the pandemic remains unknown and that staffing levels have been reduced, during this statewide emergency declaration, CPD may treat a FOIA request as unduly burdensome, in the event that it is not feasible for CPD to comply with or deny a request for public records within 5 business days after its receipt of the request or the time for response was properly extended under 5 ILCS 140/3(e) because it would unduly burden CPD's operations during the COVID-19 pandemic."

¶ 7    CPD thereafter denied Gandlur's request in a letter issued on August 24, 2020. Therein, CPD explained that no body-worn camera footage of the shooting itself existed because the officers involved were part of a new unit not yet equipped with such cameras. Other responsive video footage did exist, from in-car and body-worn cameras capturing events after the shooting. However, CPD asserted that these responsive records were exempt under sections 7(1)(d)(i), (ii) and (vii) of FOIA (5 ILCS 140/7(1)(d)(i), (ii), (vii) (West 2020)), because CPD and COPA had pending investigations into the shooting, and any release of the records would therefore interfere with those pending law enforcement and administrative enforcement proceedings and obstruct an ongoing criminal investigation.

¶ 8    CPD also denied Gandlur's request under section 3(g) of FOIA (5 ILCS 140/3(g) (West 2020), because processing it would be unduly burdensome in light of the short response time required by FOIA and the volume of material involved. A search for responsive video returned 71

hours of footage which, based upon prior experience, would each require 3 hours of review totaling at least 213 hours. For these reasons, CPD concluded:

"These facts, paired with the short response time allowed by FOIA, make the task of identifying, collecting, and reviewing potentially responsive records in a timely manner unduly burdensome upon CPD. As a result, CPD has determined that compliance with your request is unduly burdensome and that CPD's burden to process your request outweighs the public's interest.

At this time, your request is unduly burdensome as currently written. However, to the extent that you narrow your FOIA request, it was determined that the release of any body-worn camera video and in-car camera video records at this time must be denied pursuant to 7(1)(d)(i), (ii), and (vii) as explained above."

¶ 9    Two days after the shooting, on August 11, 2020, Thayer submitted his own FOIA request seeking "all motion picture / video footage of the police shooting of Latrell Allen on Sunday, August 9th, including the events leading up to the shooting and police / community interactions in the vicinity of the shooting for three hours afterwards," including "that from police 'body cams,' and all other footage by private and public individuals and institutions obtained by [CPD]." Thayer also sought "emails and memos related to this shooting, from August 9th thru []August 11th, with the suggested search terms 'Latrell Allen,' 'Allen,' 'Englewood,' and 'shooting.' " CPD acknowledged receipt of the request the same day and, in a letter issued August 11, 2020, CPD extended the time to respond by five business days under section 3(e) of FOIA. That letter contained the same information regarding COVID-19 and CPD's ability to timely respond to FOIA requests discussed above.

¶ 10    CPD denied Thayer's request on August 25, 2020, explaining in its letter that no body-

worn camera footage of the shooting existed but responsive videos from after the shooting did exist. However, CPD contended that these responsive records were exempt under FOIA for the same reasons it had denied Gandlur's request. CPD also determined that compliance with Thayer's request for emails as written would also be unduly burdensome because a search using his proposed search terms and time-period returned approximately 30,000 potentially responsive emails, each of which based upon prior experience could be comprised of a single page to well over 1,000 pages including attachments. CPD estimated based on prior experience that a review of those emails would take 1,000 hours at a minimum. The letter concluded as follows:

"At this time, your request is unduly burdensome as currently written. Pursuant to Section 3(g) of FOIA, we would like to extend to you an opportunity to modify your request to make it more manageable. CPD encourages you to review your request to ascertain the specific details to your query. Unless and until a new FOIA request is submitted that specifies what records you are seeking, CPD will be unable to provide further records. Once this is determined, a new FOIA request can be submitted to CPD, specifying the records you would like CPD to provide. However, as explained above, it was determined that the release of any records specifically relating to the referenced officer-involved shooting must be denied at this time pursuant to 7(1)(d)(i), (ii), and (vii).

¶ 11     Kraft, on behalf of ECW, also submitted a FOIA request on August 11, 2020, seeking "all audio, video, reports, emails, texts, and other records regarding or referencing the police involved shooting, resulting in injury on August 9, 2020, in or near Englewood" involving Latrell Allen. CPD acknowledged receipt of the request the next day and, in a letter issued August 12, 2020, CPD extended the time to respond by five business days under section 3(e) of FOIA. That letter once again contained the same information regarding COVID-19 and CPD's ability to timely

respond to FOIA requests discussed above.

¶ 12    On August 26, 2020, CPD provided Kraft and ECW with redacted copies of the arrest report and original case incident report but otherwise denied their request. However, in a letter issued that day CPD again noted the lack of body-camera footage of the shooting and further asserted that responsive records were otherwise exempt under sections 7(1)(d)(i), (ii), and (vii) of FOIA. CPD also contended that compliance with the request for other video records would be unduly burdensome under section 3(g), and Kraft's request for "all emails" regarding the shooting was also unduly burdensome because he did not provide any email addresses, employee names, specific search terms, or a time frame for the search. CPD extended an opportunity to narrow the request in the exact same manner as it had with respect to Thayer's request, but once again maintained that a narrowed request for records relating specifically to the officer-involved shooting must also be denied at that time under sections 7(1)(d)(i), (ii), and (vii) of FOIA.

¶ 13    On September 9, 2020, Gandlur and Thayer filed a joint complaint in the circuit court, each raising counts asserting that CPD improperly withheld the requested records, failed to conduct an adequate search for responsive records, and willfully and intentionally violated FOIA with respect to their respective FOIA requests. Kraft and ECW filed a three-count complaint the same day containing identical allegations with respect to the FOIA request filed by Kraft. The two complaints were later consolidated without objection.

¶ 14    On January 21, 2021, plaintiffs filed a motion for partial summary judgment and for "CPD to produce an index of each redacted or withheld record at the same time as CPD's response to this motion," pursuant to section 11(e) of FOIA. 5 ILCS 140/11(e) (West 2020) ("On motion of the plaintiff, prior to or after *in camera* inspection, the court shall order the public body to provide an index of the records to which access has been denied."). CPD responded with a cross-motion

for summary judgment. In support of its motion, CPD submitted affidavits from FOIA Officer Andrew Marlan, who handled all three FOIA requests, Commander Kevin Bruno from the Bureau of Detectives' Investigative Response Team, and Vaughn Ganiyu, an attorney in CPD's Legal Affairs Division who corresponded with COPA about its pending investigation. Marlan attested that he contacted Bruno (and several other CPD personnel) after receiving the FOIA requests to determine what responsive records existed and whether they could be produced. Those affidavits further generally contained information and assertions supporting the truthfulness and accuracy of the justifications contained in CPD's written responses to plaintiffs' FOIA requests. Plaintiffs did not submit any affidavits to the circuit court.

¶ 15 On June 30, 2021, the circuit court entered a written order granting CPD's motion for summary judgment and denying plaintiffs' motion for partial summary judgment. The circuit court held that CPD established by clear and convincing evidence that the requested records would interfere with an ongoing investigation, and thus were exempt, and emphasized that the incident occurred only one day before the first FOIA request was submitted. The court further determined that providing initial information about the shooting in the press releases had no bearing on whether release of records would influence witness testimony and it was "absurd to suggest that the existence of a press release *ipso facto* defeats the claimed exemption."

¶ 16 The court also concluded that CPD conducted a sufficient search and did not willfully violate FOIA. Because it determined the records were exempt under section 7(1)(d), the circuit court declined to rule on whether the requests were also properly denied as being unduly burdensome under section 3(g). However, the circuit court did grant plaintiffs partial relief by ordering CPD to "produce an index of each redacted or withheld record pursuant to FOIA Section 11(e)." Plaintiffs timely appealed.

¶ 17    Summary judgment may be entered where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2020). "Although the filing of cross-motions for summary judgment does not necessarily establish the lack of an issue of material fact or obligate a court to render summary judgment, it does indicate that the parties agree that the case involves a question of law and that they invite the court to decide the issues based on the record." *Shared Imaging, LLC v. Hamer*, 2017 IL App (1st) 152817, ¶ 13. We conduct a *de novo* review of a ruling on a motion for summary judgment. *Bank of New York Mellon v. Wojcik*, 2019 IL App (1st) 180845, ¶ 19. We may affirm a ruling on a motion for summary judgment on any basis found in the record. *Rosestone Investments, LLC v. Garner*, 2013 IL App (1st) 123422, ¶ 23.

¶ 18    The parties' contentions regarding the relevant provisions of FOIA present a question of statutory interpretation, which we also review *de novo*. *Millennium Park Joint Venture, LLC v. Houlihan*, 241 Ill. 2d 281, 294 (2010). The rules applicable to this task are well-established and were summarized in *Hendricks v. Board of Trustees of the Police Pension Fund*, 2015 IL App (3d) 140858, ¶ 14:

   "The fundamental rule of statutory interpretation is to ascertain and give effect to the intent of the legislature. [Citation.] The most reliable indicator of that intent is the language of the statute itself. [Citation.] In determining the plain meaning of statutory language, a court will consider the statute in its entirety, the subject the statute addresses, and the apparent intent of the legislature in enacting the statute. [Citations.] If the statutory language is clear and unambiguous, it must be applied as written, without resorting to further aids of statutory interpretation. [Citation.] A court may not depart from the plain language of the

statute and read into it exceptions, limitations, or conditions that are not consistent with the express legislative intent."

¶ 19 Here, FOIA itself expressly declares the statute's public policy and the legislature's intent. Section 1 provides that "it is declared to be the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2020). Section 1 goes on to explain that "[s]uch access is necessary to enable the people to fulfill their duties of discussing public issues fully and freely, making informed political judgments and monitoring government to ensure that it is being conducted in the public interest." *Id.* As such, section 1 provides that "[i]t is a fundamental obligation of government to operate openly and provide public records as expediently and efficiently as possible in compliance with this Act." *Id.* Indeed, section 1.2 of FOIA provides that "[a]ll records in the custody or possession of a public body are presumed to be open to inspection or copying. Any public body that asserts that a record is exempt from disclosure has the burden of proving by clear and convincing evidence that it is exempt." *Id.* § 1.2.

¶ 20 Specific exemptions from this required disclosure are provided in section 7 of FOIA. *Id.* § 7; see also *id.* § 3(a) ("Each public body shall make available to any person for inspection or copying all public records, except as otherwise provided in Sections 7 and 8.5 of this Act."). However,

"[r]estraints on access to information, to the extent permitted by this Act, are limited exceptions to the principle that the people of this State have a right to full disclosure of information relating to the decisions, policies, procedures, rules, standards, and other

aspects of government activity that affect the conduct of government and the lives of any

or all of the people." *Id*. § 1.

Based upon the legislature's clear expression of public policy and intent, our supreme court has held that FOIA is to be generally accorded liberal construction, while its exemptions are to be construed narrowly. *Southern Illinoisan v. Illinois Department of Public Health*, 218 Ill. 2d 390, 416 (2006). Therefore, " 'when a public body receives a proper request for information, it must comply with that request unless one of the narrow statutory exemptions set forth in *** the Act applies.' " *Id.* at 417 (quoting *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003)).

¶ 21    As relevant here, FOIA exempts from disclosure:

"Records in the possession of any public body created in the course of

administrative enforcement proceedings, and any law enforcement or correctional agency

for law enforcement purposes, but only to the extent that disclosure would:

(i) interfere with pending or actually and reasonably contemplated law

enforcement proceedings conducted by any law enforcement or correctional agency that

is the recipient of the request;

(ii) interfere with active administrative enforcement proceedings conducted by the

public body that is the recipient of the request; [or]

***

(vii) obstruct an ongoing criminal investigation by the agency that is the recipient

of the request." 5 ILCS 140/7(1)(d)(i), (ii), (vii) (West 2020).

FOIA also exempts records from disclosure under the following conditions:

"Requests calling for all records falling within a category shall be complied with

unless compliance with the request would be unduly burdensome for the complying public body and there is no way to narrow the request and the burden on the public body outweighs the public interest in the information. Before invoking this exemption, the public body shall extend to the person making the request an opportunity to confer with it in an attempt to reduce the request to manageable proportions. If any public body responds to a categorical request by stating that compliance would unduly burden its operation and the conditions described above are met, it shall do so in writing, specifying the reasons why it would be unduly burdensome and the extent to which compliance will so burden the operations of the public body. Such a response shall be treated as a denial of the request for information." 5 ILCS 140/3(g) (West 2020).

¶ 22　An individual who has been denied access to records may file an action in the circuit court for injunctive or declaratory relief. *Chicago Tribune Co. v. Department of Financial & Professional Regulation*, 2014 IL App (4th) 130427, ¶ 23 (citing 5 ILCS 140/11(a) (West 2010)). The public body then has the burden to prove, by clear and convincing evidence, that the requested records fall within an exemption. 5 ILCS 140/11(f) (West 2020). This burden is only met when the public agency " 'provide[s] a detailed justification for its claim of exemption, addressing the requested documents specifically and in a manner allowing for adequate adversary testing.' " (Emphasis omitted.) *Illinois Education Ass'n*, 204 Ill. 2d at 464 (quoting *Baudin v. City of Crystal Lake*, 192 Ill. App. 3d 530, 537 (1989)). Section 11(f) of FOIA (5 ILCS 140/11(f) (West 2020)) requires the circuit court to review the request for documents *de novo* and conduct an *in camera* examination of the requested records as it finds appropriate to determine if the records, or any part thereof, may be withheld under any provision of the Act. *Southern Illinoisan*, 218 Ill. 2d at 418. However, an *in camera* inspection is not necessary "where the public body meets its burden of

showing that the statutory exemption applies by means of affidavits." *Illinois Education Ass'n*, 204 Ill. 2d at 469 (citing *Williams v. Klincar*, 237 Ill. App. 3d 569, 572-73 (1992)). "[A]ffidavits will not suffice if the public body's claims are conclusory, merely recite statutory standards, or are too vague or sweeping." *Id*.

¶ 23 Before continuing further, we make three preliminary points. First, plaintiffs' complaints included counts asserting that CPD improperly withheld the requested records, failed to conduct an adequate search for responsive records, and willfully and intentionally violated FOIA with respect to their respective FOIA requests. In addition, plaintiffs' motion for partial summary judgment specifically asked the circuit court to order CPD to produce an index of each redacted or withheld record at the same time as CPD filed its response to that motion, pursuant to section 11(e) of FOIA. However, the circuit court only ordered CPD to do so after the cross-motions for summary judgment were fully briefed, in the same final order disposing of this matter and granting summary judgment in favor of CPD.

¶ 24 On appeal, however, plaintiffs only challenge the circuit court's grant of summary judgment in favor of CPD on plaintiffs' claim that CPD improperly withheld the requested records. We will therefore limit our analysis to that issue, as the other two claims have been forfeited. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in oral argument, or on petition for rehearing.").

¶ 25 Second, the shooting of Allen took place on August 9, 2020. Each of the three FOIA requests at issue here were filed within two days thereafter, with the first request being filed less than 24 hours after the shooting. Pursuant to FOIA, CPD had no more than 10 business days to respond to each of these requests (5 ILCS 140/3(d), (f) (West 2020)), and it is undisputed that CPD

did in fact timely respond to each of the three FOIA requests by August 26, 2020.[1] As such, CPD was required to and did in fact respond to each of plaintiffs' FOIA requests within 17 days of the shooting. This compressed timeline and the fact that these requests were made at the very beginning of the investigations into the shootings will guide our discussion, as "the propriety of a response must be judged *at the time the decision denying the FOIA request was made.*" (Emphasis in original.) *Green v. Chicago Police Dep't*, 2021 IL App (1st) 200574, ¶ 23, *appeal allowed,* No. 127229 (Sept. 29, 2021).

¶ 26    Third, the circuit court resolved this matter based on the section 7(1)(d) exemptions claimed by CPD and therefore declined to rule on the exemption CPD claimed under section 3(g) of FOIA. We find that the State's exemption claim under section 3(g) should have been evaluated first under the circumstances here, however, where CPD never claimed to have reviewed each of the records responsive to plaintiffs' requests before asserting exemptions over *all* the potentially responsive videos and emails under both sections 7(1)(d) and 3(g). This court has previously concluded that "section 7(1)(d) does not itself permit blanket exemptions," and that in situations such as those presented here, "defendants must establish an exemption under section 3(g) or be prepared to make the extensive redactions required by section 7(1)(d)." *Kelly v. Vill. of Kenilworth*, 2019 IL App (1st) 170780, ¶¶ 47-49.

¶ 27    More specifically, in *Kelly*, 2019 IL App (1st) 170780, ¶ 1, this court addressed a FOIA request for information regarding an unsolved murder. Those requests were denied under section

_____

[1] As will be discussed more fully below, the only exception is contained in section 3(e) of FOIA, which provides: "The person making a request and the public body may agree in writing to extend the time for compliance for a period to be determined by the parties. If the requester and the public body agree to extend the period for compliance, a failure by the public body to comply with any previous deadlines shall not be treated as a denial of the request for the records." 5 ILCS 140/3(e) (West 2020).

7(1)(d) of FOIA based on a claim that investigations into the murder were ongoing, and the plaintiff then filed a FOIA lawsuit in the circuit court. *Id*. Notably, one of the defendant police departments contended in the circuit court that "the entire file should be withheld. Going through each page of the investigative file 'could potentially require hundreds of hours to review, analyze and redact information.' " *Id*. ¶ 9. However, none of the defendants in that case ever raised a claim that the undue burden of compliance rendered the documents exempt from disclosure under section 3(g) of FOIA. *Id*. The circuit court concluded that the requests were properly denied under section 7(1)(d), after reviewing the defendant's affidavits and a representative portion of the more than 20,000 pages of responsive records *in camera*. *Id*. ¶¶ 7, 16.

¶ 28    On appeal, this court affirmed in part and reversed in part, after concluding that the defendants "failed to demonstrate that a blanket exception was warranted." *Id*. ¶ 36. We noted that the defendants had not "claimed to have reviewed defendants' entire investigative files. Instead, defendants and their affiants [had] remarked on the burden of examining and redacting every page." *Id*. ¶ 39. We found this improper, reasoning as follows:

> "Defendants here did not directly assert an exemption under section 3(g) or provide
> Kelly the opportunity to reduce his requests. Instead, they tried to obtain the benefits of
> section 3(g) without satisfying its burdens. Without properly raising a section 3(g)
> exemption in addition to the section 7(1)(d) exemptions, defendants' affidavits and
> documents submitted *in camera* did not establish why even the documents they did not sort
> through are exempt. Moreover, they did [not] demonstrate why this is the rare case in which
> nothing is left after redacting all material that is exempt under section 7(1)(d). Their
> affidavits were too sweeping for a section 7(1)(d) exemption standing alone. ***
> Defendants' approach failed to comply with the letter and spirit of Illinois's FOIA in this

instance." *Id*. ¶ 41.

This court therefore ultimately concluded:

"The items tendered to the court clearly demonstrated that an investigation into [the] murder is ongoing within the meaning of section 7(1)(d). *** Yet, section 7(1)(d) does not alone provide for the categorical assertion of the exemptions therein. Consequently, defendants have not met their burden of demonstrating that releasing any of the withheld materials would have interfered with enforcement proceedings or obstructed an investigation so as to render the entirety of their files exempt. We consequently reverse the circuit court's order granting summary judgment in their favor and remand for further proceedings consistent with this opinion. On remand, defendants will have the opportunity to raise a section 3(g) exemption upon complying with the procedures required by that statute." *Id*. ¶ 54.

¶ 29 Obviously, the situation here is not *precisely* analogous to the circumstances presented in *Kelly*, as here CPD did explicitly claim an exemption under section 3(g). Just as in *Kelly*, however, here CPD never claimed to have reviewed each of the records responsive to plaintiffs' requests before asserting exemptions over *all* potentially responsive videos and emails under both sections 7(1)(d) and 3(g), and the circuit court here granted CPD a blanket exemption solely under section 7(1)(d) with respect to videos and emails CPD had never actually individually reviewed. This result runs counter to *Kelly's* instruction that in such circumstances "section 7(1)(d) does not itself permit blanket exemptions" and therefore "defendants must establish an exemption under section 3(g) or be prepared to make the extensive redactions required by section 7(1)(d)." *Id.* ¶¶ 47-49.

¶ 30 Nevertheless, we reiterate that we may affirm a ruling on a motion for summary judgment on any basis found in the record. *Garner*, 2013 IL App (1st) 123422, ¶ 23. For the following

reasons, we conclude that CPD properly established that the records at issue were exempt under section 3(g), and it is on that basis that we therefore affirm the circuit court's grant of summary judgment in CPD's favor.

¶ 31    As a threshold matter, section 3(g) requires that before a public body invokes section 3(g) it must extend to the person making the request an opportunity to confer with it in an attempt to narrow the request. *Hites v. Waubonsee Cmty. Coll.*, 2018 IL App (2d) 170617, ¶ 55; 5 ILCS 140/3(g) (West 2020). This court has recognized that a defendant may establish that it met the burdens required by section 3(g) of FOIA via both its pre-suit written communications with the requester of information and any affidavits provided in response to a FOIA lawsuit. *Shehadeh v. Madigan*, 2013 IL App (4th) 120742, ¶¶ 32-33; *Sargent Shriver Nat'l Ctr. on Poverty Law, Inc. v. Bd. of Educ. of City of Chicago*, 2018 IL App (1st) 171846, ¶¶ 28, 38.

¶ 32    On appeal, plaintiffs contend that CPD did not comply with this requirement in "good-faith," as it did not extend a "meaningful opportunity to confer" where in the final response letters to their FOIA requests "CPD explicitly told Plaintiffs that even if they were to narrow their requests, any records related to the shooting of Mr. Allen would not be produced" due to the section 7(1)(d) exemptions claimed by CPD. We disagree.

¶ 33    Here, in each of the three letters extending the time to respond to plaintiffs' FOIA requests—issued before CPD's final response letters—CPD explicitly informed plaintiffs that it was experiencing strain in timely responding to FOIA requests due to the COVID-19 pandemic and that FOIA allows CPD and the requester to come to a mutually agreeable response period to comply with a FOIA request. Those letters also encouraged plaintiffs to work with CPD to agree on reasonable and appropriate response times in light of these concerns and informed plaintiffs that in the absence of such an agreement CPD may treat plaintiffs' requests as being unduly

burdensome under section 3(g). Furthermore, in his affidavit Marlan specifically averred: "Although I offered to confer with Plaintiffs to narrow the scope of their requests, they failed to do so." Plaintiffs did not file any affidavits below, and for "purposes of the summary judgment motion, facts contained in an affidavit are admitted as true if not contradicted by a counteraffidavit or other evidentiary material." *Vill. of Arlington Heights v. Anderson*, 2011 IL App (1st) 110748, ¶ 10.

¶ 34    Furthermore, even in CPD's final response letters CPD indicated that it was only claiming that plaintiffs' requests were exempt under section 7(1)(d) and 3(g) "at this time" and again encouraged plaintiffs to review and limit their requests and to file another, more limited FOIA request for consideration. On these facts, we conclude that CPD established that it complied with section 3(g)'s threshold requirement to extend to plaintiffs an opportunity to confer in an attempt to narrow the requests. *Shehadeh*, 2013 IL App (4th) 120742, ¶ 32 (noting that nothing in FOIA precludes a public body from continuing to assert the unduly burdensome exemption after a plaintiff refuses to narrow a FOIA request).

¶ 35    Turning now to the elements of CPD's claimed exemption under section 3(g), we note again that section 3(g) of the FOIA exempts records from disclosure where a request for all records falling within a category: (1) would be unduly burdensome for the complying public body, (2) there is no way to narrow the request, and (3) the burden on the public body outweighs the public interest in the information. 5 ILCS 140/3(g) (West 2020). Here, it is undisputed that plaintiffs made a categorical request, where they sought all the videos and emails related to the shooting. In addition, on appeal plaintiffs do not challenge whether CPD established the second element. We will therefore focus our analysis on the first and third elements of this test. Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2020) ("Points not argued are forfeited and shall not be raised in the reply brief, in

- 17 -

oral argument, or on petition for rehearing."); *Sargent Shriver*, 2018 IL App (1st) 171846, ¶ 28 (focusing solely on the section 3(g) elements discussed by the parties on appeal).

¶ 36    As to the first element, a request that is "overly broad and requires the public body to locate, review, redact and arrange for inspection a vast quantity of material that is largely unnecessary to the [requestor's] purpose constitutes an undue burden." *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 17 (2010). And again, the propriety of a response must be judged at the time the decision denying the FOIA request was made and CPD could establish that it met this element via both its pre-suit written communications with plaintiffs and the affidavits provided in response to these FOIA lawsuits. *Supra* ¶¶ 25, 31.

¶ 37    Here, CPD explicitly informed plaintiffs in writing that it was experiencing strain in timely responding to FOIA requests due to the COVID-19 pandemic and encouraged coming to an agreement to further extend the time for a response. Then, in its response letters, CPD explained that processing plaintiffs' requests would be unduly burdensome considering the short response time required by FOIA and the volume of material involved. A search for responsive video returned 71 hours of footage which would require at least 213 hours of review and 30,000 potentially responsive emails review of which would take 1,000 hours at a minimum. In the affidavits CPD provided in the circuit court, Marlan affirmed the amount of material potentially responsive to plaintiffs' requests and that plaintiffs did not seek to limit its requests. On this record, we conclude that CPD established by clear and convincing evidence that *at the time* it issued its final response letters it would be unduly burdensome to response to plaintiffs' FOIA requests. See, *e.g. Shehadeh*, 2013 IL App (4th) 120742, ¶ 35 (review of 9,200 records deemed undue burden); *Sargent Shriver*, 2018 IL App (1st) 171846, ¶ 35 (review of 600 reports requiring hundreds of hours deemed undue burden).

35    As to the third element, we conclude that CPD showed that the burden on it outweighed the public interest in the information requested at the time CPD denied plaintiffs' requests. 5 ILCS 140/3(g) (West 2020). We have no doubt that the public has a significant interest in information related to this or any officer-involved shooting. However, we reject plaintiffs' contention that CPD failed to show that this interest was outweighed by its burden to respond where CPD established: (1) CPD had no more than 10 business days to respond to the request and plaintiffs did not respond to offers to extend that time further, (2) a response would require reviewing over 30,000 records requiring more than 1,200 hours of work and plaintiffs did not respond to efforts to confer about the scope of their requests, and (3) CPD did not foreclose the possibility of providing some of this records in the future in response to modified or limited requests, but only denied plaintiffs requests "at this time."

36    Ultimately, considering the compressed timeline and the specific facts of this case, we conclude that CPD met its burden to prove that the requested records fell within the exemptions contained in section 3(g) of FOIA at the time it responded to plaintiffs' requests a mere 17 days after the shooting. The uncontradicted correspondence and affidavits provided below were not conclusory, vague, or sweeping, nor were they comprised of a mere recitation of statutory standards. Rather, the circuit court was provided uncontradicted documents and affidavits providing reasonably sufficient detail to allow for adequate adversary testing, and those affidavits provided "some *objective* indicia that the exemption is applicable under the circumstances." (Emphasis in original.) *Illinois Education Ass'n*, 204 Ill. 2d at 470-71. As such, summary judgment was appropriate because the affidavits showed with reasonable specificity why the records fell within the claimed exemptions. *Id.*

37    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 38 Affirmed.