2022 IL App (1st) 211016-U

FIFTH DIVISION
August 12, 2022

Nos. 1-21-1016 & 1-21-1039 (cons.)

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| ANNETTE ELMORE, | ) | Appeal from the Circuit Court |
| | ) | Cook County. |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | No. 14 CH 18117 |
| | ) | |
| CITY OF CHICAGO, BOARD OF EDUCATION, | ) | |
| | ) | Honorable Pamela McLean |
| | ) | Meyerson, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE CONNORS delivered the judgment of the court.
Presiding Justice Delort and Justice Cunningham concurred in the judgment.

**ORDER**

¶ 1    *Held:*    In response to FOIA requests, defendant conducted an adequate search and disclosed responsive documents in its possession; due process claims were forfeited; there was no showing of perjury; employees in the circuit court clerk's office did not act illegally; failure of defendant's attorneys to file appearances was not a basis for reversing the judgment; affirmed.

¶ 2    Plaintiff, Annette Elmore, appeals *pro se* the circuit court's rulings on summary judgment

relating to her cause of action under the Illinois Freedom of Information Act (FOIA) (5 ILCS 140/1

*et seq.* (West 2012)) against defendant, the Board of Education of the City of Chicago (Board),

which runs Chicago Public Schools (CPS). On appeal, Elmore contends that 1) there was a question of fact about whether she was denied nonexempt records, 2) the circuit court incorrectly ruled on her request for a document known as the Decision Support System 2 List (DS2 list), 3) she was denied due process, 4) the circuit court relied on a provision of FOIA that was added after Elmore filed her complaint, 5) the court should have made a finding of perjury against a Board affiant and considered Elmore's motion to order perjury separately from a motion for summary judgment, 6) the circuit court improperly allowed the Board to present exhibits that were filed three months after it filed a motion for summary judgment, 7) the Cook County clerk's office illegally date-stamped exhibits, 8) it was improper for CPS to have seven attorneys come on and off the case, and four of the attorneys did not file an appearance, and 9) this court should disregard a supplemental appendix that the Board filed on appeal. We affirm.

¶ 3                                I. BACKGROUND

¶ 4     In 2011, Elmore was laid off from her position as a CPS teacher at Healy South High School, which was an alternative learning program conducted with the Illinois Department of Corrections. On November 10, 2014, Elmore filed a complaint under FOIA, alleging that the Board denied her requests for various documents. Elmore's requests included an unredacted copy of a DS2 list with the phrase "not recommended" next to her name and an "[e]thnic (racial) breakdown" of all hires from May 30, 2011, to October 15, 2013, at Jefferson and York Alternative High Schools, along with other information about educators who were hired at those schools. Elmore's theory was that although the Board stated that she was laid off due to a reallocation of funds, she was actually laid off due to her ethnicity and age.

¶ 5     Elmore filed numerous pleadings, and eventually the circuit court ordered Elmore to provide a summary memo, which the court considered a motion for summary judgment. In that

memo, Elmore stated in part that instead of producing an unredacted copy of the DS2 list, the Board produced a CPS roster. Elmore had also not received the ethnic breakdown of all new English and language arts hires at Jefferson and York schools, along with other information about those hires.

¶ 6    In response, the Board included a chart that listed each of Elmore's 30 FOIA requests and its response to each. The Board asserted that it had provided documents in response to Elmore's request for the DS2 list. As for Elmore's request regarding Jefferson and York schools, the Board stated that it was unable to provide individual employee ethnicity "because the group is so small (6) providing a summary of the ethnicity would lead to identification of the employee."

¶ 7    On September 7, 2018, the circuit court denied Elmore's motion for summary judgment. The court noted that Elmore submitted both electronic and hard copies of the Board's alleged responses. According to the court, Elmore did not prove that the Board withheld responsive documents or that the Board's responses were inadequate. It was not enough for Elmore to argue that she was familiar with how the Board worked and she knew that the documents must exist. The court encouraged the parties to narrow their dispute.

¶ 8    On July 9, 2019, the Board moved for summary judgment, stating that it had responded to Elmore's requests and provided responsive documents in its possession. Elmore failed to produce any evidence, other than her own conjecture, that the Board deliberately withheld documents or that the documents pertaining to her requests actually existed. The Board also asserted that an employee's race is considered personal information that is not subject to FOIA. Appended to the Board's motion were copies of correspondence with Elmore and the documents that had been produced.

¶ 9    Elmore responded and filed a cross-motion for summary judgment. In part, Elmore asserted that the Board falsely claimed that she did not appear on the DS2 list. Elmore stated that the DS2 list was generated from an online reemployment application that she completed at the Board's direction. Among the attachments to Elmore's response and motion was a document dated April 27, 2011, and titled "IDOC/Healy SO," which listed Elmore and 10 other teachers, their job titles, program areas, "Sr. Date[s]," and certifications.

¶ 10    In reply and response, the Board noted that Elmore had filed actions in federal court based on her discrimination claim. As part of the federal matters, the Board disclosed to Elmore multiple documents under seal that contained much of the material she later requested, including documents from the DS2 system.

¶ 11    The Board also submitted affidavits from three employees who were familiar with various aspects of Elmore's FOIA requests. Andrew Mason, who was the Board's managing FOIA officer, averred that the Board provided records to Elmore from the DS2 list on a CD in 2015. The Board also tendered Elmore's entire file as an act of goodwill. Mason further stated that the Board does not release information based on race because that may likely lead to identifying individuals and the release of that information may be an invasion of privacy. A search of English teachers at Jefferson and York schools based on gender and ethnicity identified six people. The release of that information would personally identify those employees, violating FOIA. Craig Swanton, the Board's director of HRIT in information and technology services, averred in his affidavit that as part of the application process for teaching positions, there were four ratings that could be assigned to applicants after someone reviewed the application, resume, and responses to essay questions. There were no records that Elmore ever completed the essay questions. Lauren Clair-McClellan, executive director of human resource operations for the Board, averred in her affidavit that in April

2011, she created a document known as Exhibit A as part of an analysis of teachers affected by the reallocation of funds related to Healy South. The purpose of Exhibit A was to identify a teacher's area of experience and seniority to help in redeployment efforts within the district. Exhibit A was not attached to the affidavit.

¶ 12    In further reply, Elmore noted in part that Exhibit A was not identified in Clair-McClellan's affidavit and Elmore did not know what that document entailed.

¶ 13    After a hearing, the court issued a written order on November 24, 2020, that granted in part and denied in part the cross-motions for summary judgment and stated in part as follows. The Board produced evidence that it conducted a search and did not have the documents that pertained to certain requests. The Board submitted affidavits, response letters, and copies of the documents it produced, and Elmore did not refute the evidence of an adequate search. Further, the Board showed by clear and convincing evidence that an exemption applied to the request for the ethnic breakdown of certain hires. The Board made a compelling case that releasing racial information for a group so small could reveal the identities of the subject employees. There was one exception to the Board's showing that its search was adequate and all responsive, nonexempt documents were produced—Exhibit A to Clair-McClellan's affidavit. The court ordered the Board to produce Exhibit A. Also, because Elmore's complaint alleged that the Board's failure to produce documents was willful and intentional, there was a genuine issue of material fact on the issue of willfulness related to Exhibit A.

¶ 14    On February 22, 2021, the Board moved for summary judgment as to Exhibit A. The Board stated that Exhibit A was an April 27, 2011, document that Elmore previously referenced in her own filings and was called the IDOC/Healy SOL.[1] The document was not responsive to Elmore's

---

[1] The document itself has "IDOC/Healy SO" written at the top, but we will use the Board's title of "IDOC/Healy SOL."

FOIA requests, and so there was no delay or prejudice to her from not producing it. Regardless, the IDOC/Healy SOL document was previously produced to Elmore, and she relied on that document in a summary judgment filing to prove the existence of other records. In addition to the IDOC/Healy SOL document, other documents appended to the Board's motion included Elmore's previous FOIA requests, the documents produced in response, and previous filings in the instant and federal matters.

¶ 15    Elmore filed a motion opposing a change in the Board's counsel, stating in part that the latest motion for summary judgment was filed by an attorney who had not filed an appearance and refused to communicate with her. Elmore stated that seven attorneys had represented the Board, which was "a disgrace" and prejudiced her. Challenging the Board's characterization of the IDOC/Healy SOL document, Elmore stated that the Board could not use a document that she previously submitted, reformat it, and pass it off as Exhibit A.

¶ 16    Elmore also responded to the Board's motion for summary judgment as to Exhibit A. Elmore stated that the Board's filings did not indicate that a reasonable search was made for Exhibit A, which CPS refused to produce and did not exist. Elmore also asserted that Clair-McClellan's affidavit was perjured because Clair-McClellan averred that Exhibit A was created in April 2011 for teachers affected by a reallocation of funds, but the staff at Healy South was not laid off until July 2011.

¶ 17    In its reply filed on May 4, 2021, the Board again stated that Exhibit A was the IDOC/Healy SOL document, which Elmore previously received. The Board included a copy of a letter sent to Elmore on December 18, 2020, that enclosed the IDOC/Healy SOL document.

¶ 18    On May 21, 2021, Elmore filed a motion to strike the exhibits that the Board submitted as part of its reply. Elmore stated that the Board's motion for summary judgment as to Exhibit A did

not have any exhibits attached. Elmore also stated that the clerk's office received filed exhibits from the Board, but did not inform the Board that its exhibits could not be accepted because they were not filed with the motion for summary judgment. Elmore further alleged that the clerk's office illegally date-stamped the Board's submitted exhibits. The court denied Elmore's motion on June 11, 2021, and ordered the Board to mail Elmore a copy of its motion for summary judgment as to Exhibit A with exhibits.

¶ 19    On June 14, 2021, Elmore filed a motion to order perjury against Clair-McClellan because she averred that Exhibit A was created in April 2011 for teachers affected by a reallocation of funds, but none of the staff at Healy South were laid off in April 2011. Elmore asserted that Clair-McClellan committed a Class 3 felony.

¶ 20    At a hearing on July 20, 2021, the court noted that two motions were pending: CPS's motion for summary judgment as to Exhibit A and Elmore's motion to order perjury. The court granted the Board's motion for summary judgment. The court stated that the IDOC/Healy SOL document matched the description of Exhibit A in Clair-McClellan's affidavit. Based on all of the circumstances, the IDOC/Healy SOL document was Exhibit A. Further, the Board was not willful and intentional when it initially did not attach the document to Clair-McClellan's affidavit. It was also shown that Elmore previously had this document and attached it to her own filings. Turning to Elmore's motion, the court found that there was no showing of perjury and denied the motion. The IDOC/Healy SOL document could have been created before the announcement that Healy South would close. The court noted that the order granting CPS's motion for summary judgment and denying Elmore's motion to order perjury was a final and appealable order that disposed of all matters. The court also entered a written order consistent with its oral ruling.

¶ 21    Elmore timely appealed.

¶ 22                                    II. ANALYSIS

¶ 23                    A. Elmore's Motion for Summary Judgment

¶ 24    We first consider Elmore's contention that there was a question of fact about whether she was denied open, nonexempt records. Elmore argues that CPS did not respond to six of her requests, and the circuit court did not rule on or order discovery related to those records. Elmore further asserts that the circuit court did not enforce FOIA despite her summary memo, which was deemed a motion for summary judgment. We construe Elmore's argument to be that the circuit court incorrectly denied her motion for summary judgment.

¶ 25    The purpose of FOIA is " 'to open governmental records to the light of public scrutiny.' " *Better Government Ass'n v. City of Chicago*, 2020 IL App (1st) 190038, ¶ 12 (quoting *Stern v. Wheaton-Warrenville Community Unit School District 200*, 233 Ill. 2d 396, 405 (2009)). The FOIA statute states that it is "the public policy of the State of Illinois that all persons are entitled to full and complete information regarding the affairs of government and the official acts and policies of those who represent them as public officials and public employees consistent with the terms of this Act." 5 ILCS 140/1 (West 2012). The FOIA statute also includes a list of exemptions for certain documents that should not be disclosed. 5 ILCS 140/7 (West 2012); *National Ass'n of Criminal Defense Lawyers v. Chicago Police Department*, 399 Ill. App. 3d 1, 10 (2010). A public body must comply with a proper FOIA request unless one of the exemptions applies. *Illinois Education Ass'n v. Illinois State Board of Education*, 204 Ill. 2d 456, 463 (2003).

¶ 26    "FOIA cases are typically and appropriately decided on motions for summary judgment." (Internal quotation marks omitted.) *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 9 (quoting *Moore v. Bush*, 601 F. Supp. 2d 6, 12 (D.D.C. 2009)). "[S]ummary judgment requires the responding party to come forward with the evidence it has—it is 'the put up or shut up moment in

a lawsuit.' " (Internal quotation marks omitted.) *Parkway Bank & Trust Co. v. Korzen*, 2013 IL App (1st) 130380, ¶ 14 (quoting *Eberts v. Goderstad*, 569 F.3d 757, 767 (7th Cir. 2009)). Summary judgment is warranted if the pleadings, depositions, admissions on file, and any affidavits show that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2012). Our review of summary judgment rulings is *de novo*. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). *Pro se* litigants are held to the same standards as licensed attorneys and must comply with the same rules. *Ammar v. Schiller, DuCanto & Fleck, LLP*, 2017 IL App (1st) 162931, ¶ 16.

¶ 27    Elmore contends that CPS violated FOIA by not responding to six of her FOIA requests, but she does not explain in her brief what those six requests were. Her complaint consisted of numerous FOIA requests, and we will not assume which six of those requests are at issue on appeal. Further, Elmore does not articulate specific arguments about the adequacy of CPS's search or whether CPS claimed improper exemptions as to those six requests—two key elements of a FOIA dispute. See *Better Government Ass'n*, 2020 IL App (1st) 190038, ¶ 32 (public body bears the initial burden of showing its search was adequate when it determines there are no records responsive to a request); *BlueStar Energy Services, Inc. v. Illinois Commerce Comm'n*, 374 Ill. App. 3d 990, 995 (2007) (public body has the burden of proof at the trial level to establish that documents are exempt from disclosure). This court is not a repository into which a party may dump the burden of research. *In re Estate of Mivelaz*, 2021 IL App (1st) 200494, ¶ 60. Also, an issue not clearly defined and sufficiently presented fails to satisfy the requirements of Illinois Supreme Court Rule 341(h)(7) (eff. Oct. 1, 2020) and is forfeited. *Atlas v. Myer Hoffman McCann, P.C.*, 2019 IL App (1st) 180939, ¶ 33. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2010) (argument must contain the appellant's contentions and the reasons for those contentions, with citation to authority

and the pages of the record relied on). Elmore has forfeited the issue that her motion for summary judgment was incorrectly denied.

¶ 28                                     B. DS2 List and Ethnic Breakdown

¶ 29    Elmore makes more specific arguments about the status of two other documents: the DS2 list and the ethnic breakdown of hires at Jefferson and York schools. We consider each in turn. According to Elmore, the DS2 list is part of an online application for reassignment within CPS and contains the names of educators along with one of four designations: highly recommended, recommended, recommended with reservations, or not recommended. Elmore alleges that the Board refused to produce the DS2 list where "not recommended" was placed next to her name.

¶ 30    The DS2 list was addressed in the parties' cross-motions for summary judgment. When parties file cross-motions for summary judgment, they mutually agree that there are no genuine issues of material fact and the case may be resolved as a matter of law. *Wells Fargo Bank, N.A. v. Coghlan*, 2021 IL App (3d) 190701, ¶ 22. However, to the extent that Elmore contends that a material issue of fact exists, we review that as well. *Id*. To prevail on a motion for summary judgment, a public body must show that its search was adequate and any withheld documents fall within an exemption to FOIA. *BlueStar Energy Services, Inc.*, 374 Ill. App. 3d at 996. If the public body's submissions are adequate on their face, the circuit court may forgo discovery and award summary judgment on the basis of affidavits. *Id*. at 997.

¶ 31    The Board's FOIA officer averred in his affidavit that documents related to the DS2 list were tendered to Elmore on a CD in 2015. The Board's director of HRIT in information and technology services stated in an affidavit that there was no record that Elmore completed the application questions that would have triggered one of the four designations. The Board also submitted the documents it produced to Elmore. The Board's affidavits and submissions met its

burden to show that it produced the DS2 list documents that were in its possession, and that it did not have a document showing Elmore's name with a "not recommended" designation. Elmore did not prove otherwise. "Mere speculation, conjecture, or guess is insufficient to withstand summary judgment." *Source v. Naperville Jeep Eagle, Inc.*, 309 Ill. App. 3d 313, 328 (1999). Elmore's belief that a certain document must exist does not make it so. CPS sufficiently proved that it met its obligations under FOIA as to the DS2 list.

¶ 32    As to the second specific document at issue, Elmore sought the "[e]thnic (racial) breakdown" of all hires from May 30, 2011, to October 15, 2013, at Jefferson and York schools. CPS denied the request, stating it was "unable to provide individual employee ethnicity and because the group is so small (6) providing a summary of the ethnicity would lead to identification of the employee." Elmore asserts that the circuit court did not determine whether the Board was justified in refusing her request. Elmore also states that the circuit court simply relied on the Board's "non-convincing, conclusionary rhetoric," and ethnicities do not identify any individual.

¶ 33    The Board's FOIA officer stated in his affidavit that CPS does not release information based on race because it may likely lead to identifying individuals and the release may be an invasion of privacy. The FOIA officer further stated a search identified six people and releasing the requested information would personally identify those employees, which in turn would violate FOIA. The Board's justification for not releasing the information and the circuit court's agreement with the Board were on solid ground. One of the exemptions in the FOIA statute applies to:

> "Personal information contained within public records, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy, unless the disclosure is consented to in writing by the individual subjects of the information. 'Unwarranted invasion of personal privacy' means the disclosure of information

that is highly personal or objectionable to a reasonable person and in which the subject's right to privacy outweighs any legitimate public interest in obtaining the information." 5 ILCS 140/7(c) (West 2012).

This court has held that public employees have a reasonable expectation that their racial identification will remain private. *CBS, Inc. v. Partee*, 198 Ill. App. 3d 936, 945 (1990). Elmore offers no contrary argument that is supported by case law. Elmore suggests that CPS could have redacted the names and just provided the employees' ethnicities. It is unclear how that is different from what she requested. Regardless, with such a small number of people involved, releasing only ethnicities could still lead to identifying individual employees. Elmore's request was properly denied under a FOIA exemption.

¶ 34                                C. Due Process

¶ 35    Elmore next contends that she was denied due process and substantive due process, but does not explain what actions in the circuit court violated her due process rights. As stated above, an issue not clearly defined and sufficiently presented does not satisfy the requirements of Rule 341(h)(7) (eff. Oct. 1, 2020) and is forfeited. *Atlas*, 2019 IL App (1st) 180939, ¶ 33.

¶ 36                            D. Section 2(h) of FOIA

¶ 37    Elmore asserts that the circuit court granted summary judgment on the basis of section 2(h) of FOIA, which concerns voluminous requests and was not in effect when she filed her complaint in 2014. According to Elmore, the circuit court allowed the Board to invoke section 2(h) as an affirmative defense.

¶ 38    Section 2(h) defines "voluminous request" and was added to the FOIA statute in December 2014. Pub. Act. 98-1129 (eff. Dec. 4, 2014) (amending 5 ILCS 140/2). Contrary to Elmore's contention, the circuit court's orders on the summary judgment motions do not mention section

2(h). That section is not a reason for disturbing the court's judgment. Also, we review the circuit court's ruling and not the reasons for the ruling. *Barney v. Unity Paving, Inc.*, 266 Ill. App. 3d 13, 18 (1994). We find no error in the circuit court's conclusion that CPS performed an adequate search and disclosed all that was required.

¶ 39                                    E. Perjury

¶ 40    Elmore next contends that the circuit court should have found that Clair-McClellan committed perjury, an issue that Elmore raised in her motion to order perjury. Elmore focuses her argument on Exhibit A, which initially was not attached to Clair-McClellan's affidavit and was later deemed to be the IDOC/Healy SOL document that Elmore had already received. Elmore disputes that Exhibit A is the IDOC/Healy SOL document. Elmore further argues that Clair-McClellan committed perjury because the IDOC/Healy SOL document could not have been made for teachers affected by a reallocation of funds where the layoffs for which the document was created did not occur until three months later.

¶ 41    We construe Elmore's position to be that the circuit court should have entered an order of contempt against Clair-McClellan. See *People v. Randall*, 89 Ill. App. 3d 406, 412 (1980) (perjury and false swearing constitute indirect contempt). Though "the mere filing of court documents containing known falsities may be calculated to impede or obstruct the court in its administration of justice [citation], the evidence must still show that the party charged with contempt willfully made the false representation." *Windy City Limousine Co. v. Milazzo*, 2018 IL App (1st) 162827, ¶ 57.

¶ 42    The circuit court properly concluded that Clair-McClellan did not make a false representation. The court's determination was based on evaluating credibility and weighing evidence, and in that scenario, we may not substitute our judgment for that of the trier of fact unless

the evidence is so unreasonable, improbable, or unsatisfactory as to clearly require a different conclusion. *Sunset Travel, Inc. v. Lovecchio*, 113 Ill. App. 3d 669, 678 (1983). The evidence supports a finding that Exhibit A was the IDOC/Healy SOL document and was created for the purpose stated in Clair-McClellan's affidavit. Clair-McClellan averred that she created Exhibit A as part of an analysis of teachers affected by a reallocation of funds affecting Healy South. The purpose of the document was to identify a teacher's area of experience and seniority to assist in redeployment efforts within the district. Meanwhile, the IDOC/Healy SOL document is dated April 27, 2011, and lists Elmore and other teachers, along with their job titles, the programs in which they taught, their "Sr. Date[s]," and their certifications. As the circuit court found, the IDOC/Healy SOL document matched the description of Exhibit A in Clair-McClellan's affidavit. Further, it is reasonable to conclude that the document was created to plan for the layoffs that occurred three months later. There was no showing that the IDOC/Healy SOL document was perjured or that Clair-McClellan made false statements in her affidavit. The circuit court properly denied Elmore's motion to order perjury.

¶ 43     Also, the record contradicts Elmore's assertion that the circuit court did not rule on her motion to order perjury. The circuit court explicitly denied the motion after the hearing on July 20, 2021, providing reasons for doing so, and the court's written order also stated that "[p]laintiff's [m]otion is denied." The circuit court fully addressed Elmore's motion to order perjury.

¶ 44                    F. Allegedly Late Exhibits

¶ 45     Elmore next states that the Board should not have been allowed to file exhibits where they were not attached to its summary judgment motion that the Board filed on February 22, 2021. The Board attached exhibits to each of its summary judgment motions, so Elmore's argument is confusing. If Elmore is referring to Exhibit A, that matter was fully addressed in the circuit court.

During the proceedings on the parties' cross-motions for summary judgment, the Board initially did not attach Exhibit A—the IDOC/Healy SOL document—to Clair-McClellan's affidavit, but later produced it as required by a court order. The record indicates that Elmore already had this document. The court found that the Board did not willfully withhold it, a finding that we see no reason to disturb. Again, the record shows that the Board attached other exhibits to its motions for summary judgment, including the one filed on February 22, 2021. Elmore misconstrues the record, and there is no error here.

¶ 46                         G. Accusation Against the Clerk's Office

¶ 47     Elmore asserts that "someone in the Clerk of the Court *** did something very illegal." This argument seems to be the same one she advanced in the circuit court that the clerk's office illegally back-dated the exhibits that the Board filed in support of its motion for summary judgment as to Exhibit A. Elmore's accusation is purely speculative and unsupported by any evidence in the record. See Ill. S. Ct. R. 341(h)(7) (eff. Oct. 1, 2010) (argument must contain appellant's contentions and the reasons for those contentions, as well as cite to authority and the pages of the record relied on). Some exhibits to the Board's summary judgment motion have two date-stamps, but that does not mean anything illegal occurred, The exhibits are the same as those appended in previous filings, which explains why two date-stamps appear. There is no error.

¶ 48                         H. Attorney Appearances

¶ 49     Elmore next contends that the Board engaged in trickery by having seven attorneys come on and off the case. Elmore also states that four of the Board's attorneys did not file appearances, and one attorney left the case without withdrawing by motion. Elmore argues that the Board violated Illinois Supreme Court Rule 13 (eff. July 1, 2017), and she was prejudiced as a result.

¶ 50    Rule 13 requires an attorney to file a written appearance or other pleading before addressing the court unless the attorney is presenting a motion for leave to appear by intervention or otherwise, and to obtain leave of court before withdrawing an appearance. Ill. S. Ct. R. 13(c)(1), (2) (eff. July 1, 2017). Here, the Board's attorneys were not required to file separate appearances, or obtain leave of court to withdraw. "[T]he employment of a law firm is the employment of all members of that firm unless there is a special understanding otherwise." *Knight v. Guzman*, 291 Ill. App. 3d 378, 382 (1997). Applying the rule of *Knight* to a governmental body with a large in-house legal staff that functions like a law firm, and noting that it is common practice for multiple attorneys from a governmental body to appear in court for that body without filing individual appearances, we reject Elmore's contention that the failure of the Board's attorneys to file individual appearances constituted reversible error.

¶ 51                              I. Supplemental Appendix

¶ 52    Lastly, we address the supplemental appendix that the Board filed with its brief that includes documents from Elmore's federal cases. The Board asserts that we may take judicial notice of these documents. The Board further argues that Elmore's pattern of making accusations against judges that rule on her cases is relevant to this appeal. Elmore strenuously objects to the federal documents being included in the record on appeal.

¶ 53    Elmore's accusations warrant comment. Elmore's filings in the circuit court are peppered with various accusations against the judges who presided over her case. On appeal, Elmore's brief accuses a judge of "deliberately [prejudicing]" her and of making "no attempt based on the rule of law" to enforce FOIA and legal precedent. To the extent that Elmore claims that any judge she has interacted with was biased against her, that claim is rejected. Judges are presumed to be impartial, and Elmore has not presented any evidence to overcome that presumption. See *Lesher v. Trent*,

407 Ill. App. 3d 1170, 1176 (party claiming bias must show either a personal bias from a source other than the litigation or comments made during the proceedings that reveal such a high degree of favoritism or antagonism as to make a fair judgment impossible). The circuit court judges who handled Elmore's lawsuit did so fairly and considered her arguments. Simply that Elmore has lost is not evidence of bias. See *Eychaner v. Gross*, 202 Ill. 2d 228, 280 (2002) (a judge's rulings alone are almost never a valid basis for a claim of judicial bias). Elmore has not shown that any judge in the circuit court was biased against her or participated in any misconduct.

¶ 54    As for the supplemental appendix, we may take judicial notice of the record in another case involving the same party or of public documents contained in the record of any other judicial proceeding if doing so would help us decide the present case. *In re Marcus S.*, 2022 IL App (3d) 160710, ¶ 47 n.2. Here, however, the supplemental appendix is not necessary, as we can fully address this appeal without it.

¶ 55                                    III. CONCLUSION

¶ 56    For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 57    Affirmed.